Gregory HARRIS, Plaintiff,

v.

CITY OF MONTGOMERY, et al., Defendants.

Civil Action No. 2:03cv529–T.

United States District Court, M.D. Alabama, Northern Division.

June 3, 2004.

---

Katy Smith Campbell, Marilyn M. Garner, Prince Darius Chestnut, J.L. Chestnut, Jr., Chestnut, Sanders, Sanders, Pettaway & Campbell PC, Selma, AL, for Plaintiff.

Walter Ryland Byars, Jr., Steiner, Crum & Baker, Kimberly Owen Fehl, Wallace Damon Mills, Montgomery, AL, for Defendants.

Percy King, Montgomery, AL, pro se.

## OPINION AND ORDER

MYRON H. THOMPSON, District Judge.

Plaintiff Gregory Harris, a City of Montgomery Parks and Recreation Department employee, brings this lawsuit against his employer, defendant City of Montgomery, Alabama, and his supervisors, defendants James Williams and Curtis Green. He alleges that they discriminated against him on the basis of his membership in the Army Reserve, in violation of the Uniform Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C.A. § 4311, and the Fifth, Ninth, and Fourteenth Amendments to the United States Constitution, as enforced through 42 U.S.C.A. § 1983.

In his complaint, Harris sets forth three incidents in which defendants, according to him, violated his federal rights. First, he was "demoted" from the position of head football coach to that of assistant coach; second, he was required to use accrued vacation time for time spent serving in the military reserve; and, third, he was denied a merit-based raise.

By order entered on May 15, 2004, the court denied defendants' motion for summary judgment as to Harris's USERRA claim and reserved reaching his Fifth, Ninth, and Fourteenth Amendment claims. The court now explains the basis for its May 15 order, and the court further addresses defendants' summary-judgment motion as to Harris's Fifth, Ninth, and Fourteenth Amendment claims.

## I. FACTUAL BACKGROUND

Harris is a member of the Army Reserve and is also employed on a 20–hour per week basis for the City of Montgomery Parks and Recreation Department. He has worked for the city since 1996 and has held the position of "Recreation Leader I" since 1999; he was the Bellingrath Junior High School Head Football Coach for the 1999–2000 and the 2000–2001 school years.

In early August 2002, Harris told Athletic Director Williams that he had been called up for annual military training, but that he did not know when he would be required to go. On August 22, 2002, two events took place: first, Harris showed Williams and Bellingrath Community Center Director Green his military orders, which indicated he would have to report for service in September 2002; and, second, Williams told Harris that he would serve as the assistant coach, and another employee would be the head coach.

Defendants contend Harris was moved to the position of assistant coach because student participation had decreased; according to defendants, a decision was made that the team would benefit from having a coach that was available "on-site" on a full time basis.

Harris requested a due-process hearing in October 2002 to contest this decision. However, the letter Harris's counsel sent to the City Personnel Department did not explain that his grievance related specifically to the change in his status from head coach to assistant coach; therefore, he received a general response only, stating that he had not been demoted because he was still classified as a "Leader I."

Harris was called up again by the Army Reserve for six days of training between

March 22 and 31, 2003. When he received his April 4, 2003, paycheck, the paycheck indicated that he had used 20 hours of annual leave during the period of his reserve service. Harris contends that, for this March period, he should have been on paid military leave instead. Defendants agree, in principle, that Harris should not have to use vacation time when he is doing his reserve duty, and contend that they did give him military leave. However, the evidence defendants present relate to Harris's pay for *September 2002*, not the *March 2003* period on which he bases his claim.[1]

Last, Harris states that, in April 2003, he was denied a merit raise because of his military status and duties. As evidence of this discrimination, Harris points to a negative memorandum written by Bellingrath Community Center Director Green, Harris's direct supervisor, which is in direct opposition to another memorandum, also from Green, filed three days earlier. The earlier memorandum specifically recommends a merit increase for Harris, and states that he is

> "knowledgeable of and carries out his duties and assignments. He is punctual for work and notifies me if he may be late. He requests leave in advance and does not abuse sick leave. However, he needs improvement in the area of following the chain of command."[2]

The second memorandum, written just three days later, states:

> Coach Harris fails to notify the Director of intent to be off work in a timely manner; fails to submit request for leave/submit military leave orders in a timely manner; leaves work early; fails to notify the Director of his practice

schedule; fails to follow protocol & chain of command in resolving problems; displays a lack of respect for the Director/Assistant Director—failure to maintain a professional domineer when speaking with the Director; questions/challenges authority & decisions made by the Director; jeopardized the safety of athletes; and is not a team player.[3]

Harris contends that the negative memorandum resulted in the denial of a merit-based raise. Defendants contend that he was not due for a merit-based raise in April 2003, and that he has never been denied a merit-based raise. As will be explained in more detail in conjunction with the analysis of this claim, the court invited both parties to submit evidence clarifying when Harris was due for a merit-based raise, and when, if ever, he was denied a raise. Only defendants took the court up on this offer and submitted evidence that Harris was not due for an increase until August 2003. Although Harris did not receive the raise until October 2003, defendants explained that this was due to an administrative error. Harris received back pay to compensate the time between August, when he became eligible, and October, when he actually he received the raise.

## II. DISCUSSION

### A. USERRA

USERRA states, in pertinent part:

"(a) A person who is a member of . . . . or has an obligation to perform serve in a uniformed serve shall not be denied . . . any benefit of employment by an employer on the basis of that member-

---

1. Defendant City of Montgomery's evidentiary submission, filed January 23, 2004 (Doc. no. 20), exhibit 6 (Curtis Green affidavit).

2. Plaintiff's response to defendants' motion for summary judgment, filed February 24, 2004 (Doc. no. 28), exhibit 12.

3. *Id.*, exhibit 13.

ship, performance of service ... or obligation.

"(b) An employer may not discriminate in employment against or take any adverse employment action against any person because such person ... has taken an action to enforce a protection afforded any person under this chapter ... or ... has exercised a right provided for in this chapter."

38 U.S.C.A. § 4311.

Defendants contend that Harris was not denied a "benefit of employment" and that, even if he was, the denial was not motivated by his military status. Both contentions raise disputed factual issues precluding summary judgment on Harris's USERRA claim.

### 1. Benefit of Employment

■ Defendants contend that Harris does not have a claim under USERRA because he was not denied a benefit of employment. To support this, defendants note that Harris's pay has not been reduced and he still holds the same official position of Leader I. Harris contends he was denied three benefits of employment: (1) he was denied the position of head coach; (2) he was forced to use vacation, instead of the military, leave for his time on reserve duty; and (3) he was denied a merit-based raise. The term "benefit of employment" is defined as "any advantage, profit, privilege, gain, status, [or] account ... that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes ... vacations, and the opportunity to select work hours or location of employment." 38 U.S.C.A. § 4303(2).

The determination of whether a specific condition, requirement, or term of employment is a benefit of employment is a fact-specific inquiry, and courts have construed the term liberally. For example, in *Hill v.* *Michelin North America, Inc.*, 252 F.3d 307 (4th Cir.2001), the Fourth Circuit Court of Appeals found that requiring an employee to work a less regular schedule and longer work days was a benefit of employment, but declined to answer the question of whether the fact that the employee's new assignment was considered less preferable and had less status associated with it was enough, in and of itself, to be a considered a benefit of employment. *See also Wrigglesworth v. Brumbaugh*, 129 F.Supp.2d 1106, 1110 (W.D.Mich.2001) ("It is clear from this language [in § 4303(2)] that the 'rights and benefits' of employment are not limited to wages, health and pension benefits, but includes all other rights which the employer by contract provides for eligible employees. Under the case law interpreting this section, the benefits of employment are to be viewed expansively.").

Harris has submitted sufficient evidence that the change in his position significantly affected his employment status. Harris alleges that the loss of status associated with his removal from the head coach position will limit his "coaching career options" and his "advancement opportunities" because "[n]ormally coaches are hired based upon experience and record (achievements)."[4] Harris contends that, even though he retained the official position of Leader I, he was, for all practical purposes, demoted. A reasonable jury could conclude, after hearing evidence regarding the difference in his duties and status as a head coach and an assistant coach, that he was denied a benefit of employment.

There is even stronger evidence that the vacation days that Harris was denied were a benefit of employment. Alabama law governs military leave and vacation time for all state, county, and municipal employees:

**4.** Plaintiff's supplemental response for pre- trial issues, filed April 27, 2004 (Doc. no. 37).

"All officers and employees of the State of Alabama, or of any county, municipality, or other agency or political subdivision thereof ... who are active members of the Alabama National Guard, Naval Militia, the Alabama State Guard organized in lieu of the National Guard, or of any other reserve component of the armed forces of the United States, shall be entitled to military leave of absence from their respective civil duties and occupations on all days that they are engaged in field or coast defense or other training or on other service ordered under the National Defense Act, or of the federal laws governing the United States reserves, *without loss of pay,* time, efficiency rating, *annual vacation,* or sick leave."

1975 Ala.Code § 31–2–13 (emphasis supplied). This statutory provision is also reprinted in the City of Montgomery Parks and Recreation Department and the City and County of Montgomery Personnel Board Rules and Regulations.[5] Clearly, additional military leave is considered a benefit of employment; it is part of the employer policy.

Finally, a poor evaluation, if it prevents a raise, denies a benefit of employment. In *Yates v. Merit Systems Protection Bd.,* 145 F.3d 1480 (Fed.Cir.1998), a postal-service employee, due to military service, missed a 30–day review while she was on a 90–day probationary period in a new position at the post office. She was told she would receive a 30–day, 60–day, and 90–day evaluation; at the end of the 90–day probationary period, she as fired for unsatisfactory performance. She contended that, had she received her 30–day evaluation, she would have withdrawn from the new position earlier and would not have quit a separate, full-time job that she had elsewhere. *Id.* at 1482. The Federal Circuit Court of Appeals stated that Yates

had stated a claim under USSERA; her evaluation "is properly viewed as a 'benefit of employment' because ... [it] was an 'advantage' or 'status' of her probationary employment with the Postal service." *Id.* at 1485, (citing 38 U.S.C. § 4303(2)). As in *Yates,* the negative evaluation Harris received, if indeed it did have an impact on his opportunity for a merit-based raise, should be construed as a benefit of employment.

### 2. Unlawful Motivation

To succeed on a USERRA action, the plaintiff must prove, by a preponderance of the evidence, that military service motivated the denial. *Sheehan v. Dept. of Navy,* 240 F.3d 1009 (Fed.Cir.2001). The allocation of burdens is included in the statute:

"An employer shall be considered to have engaged in actions prohibited ... if the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service."

38 U.S.C.A. § 4311(c)(1). As explained in *Sheehan,* this procedural framework is

"different from those in discrimination cases under Title VII of the Civil Right Act of 1964 ... as described in *McDonnell Douglas.* ... McDonnell Douglas, while allocating the burden of production of evidence, does not shift the burden of persuasion to the employer.... Thus in USERRA actions there must be an initial showing by the employee that military status was at least a motivating or substantial factor in the agency ac-

---

5. *Id.,* exhibits 18 and 19.

tion, upon which the agency must prove, by a preponderance of the evidence that the action would have been taken despite the protected status."

240 F.3d at 1014.

The burden-shifting framework approved of in *NLRB v. Transportation Management Corp.,* 462 U.S. 393, 401, 103 S.Ct. 2469, 2474, 76 L.Ed.2d 667 (1983), is a method used to discern whether an employer was, in fact, motivated by the employee's military status when he or she denied the benefit of employment. *Sanguinetti v. United Parcel Service, Inc.,* 114 F.Supp.2d 1313 (S.D.Fla.2000), *aff'd,* 254 F.3d 75 (11th Cir.2001) (table). This technique

"mandates three phases of proof. First, the ... [plaintiff] must show by a preponderance of the evidence that ... [military status] was a motivating factor in the employer's decision to discharge an employee. Such a showing establishes ... [a] violation unless the employer can show as an affirmative defense that it would have discharged the employee for a legitimate reason regardless of the ... [plaintiff's military status]. The ... [plaintiff] may then offer evidence that the employer's proffered 'legitimate' explanation is pretextual— that the reason either did not exist or was not in fact relied upon—and thereby conclusively restore the inference of unlawful motivation."

*NLRB v. McClain of Georgia, Inc.* 138 F.3d 1418, 1424 (11th Cir.1998).

### a. Position as Head Coach

 Harris presented evidence from which a reasonable jury could conclude that he was removed from the position of head coach because of his service in the Army Reserve. Harris submitted an affidavit stating that Williams, as Athletic Superintendent of Parks and Recreation, *told* him that his military status played a "major role" in the decision to remove him from the position of head coach.[6] Jackie Johnson, another employee of the Parks and Recreation Department who was present at the August 22 meeting, corroborated Harris's statement; she submitted an affidavit stating, "Coach Harris asked Mr. Williams what caused this change; Mr. Williams replied that Coach Harris' military training played a role in that decision process." [7]

Furthermore, discriminatory motive "may be reasonably inferred from a variety of factors, including proximity in time between the employee's military activity and the adverse employment action." *Sheehan,* 240 F.3d at 1014. Harris was informed he was not going to be the head coach on the same day he informed Green that he would be called up for duty soon. A jury could infer that, due to the proximity between the time Harris informed his supervisor that he would be away for service and the time the adverse action was taken, Harris's military duties influenced the decision.

Defendants respond that they had a legitimate, nondiscriminatory reason for changing Harris's position and that they would have taken the same action regardless of whether Harris was called up for reserve duty. Defendants contend that Harris was removed from the position of head coach because, due a decrease in participation at Bellingrath, a determination was made that the students would benefit from having a head coach who was "on site" and more involved with the stu-

6. Plaintiff's response to defendants' motion for summary judgment, filed February 24, 2004 (Doc. no. 28), exhibit 20 (Harris affidavit).

7. *Id.,* exhibit 3 (Jackie Johnson affidavit).

dents on a day-to-day basis. Harris worked only 20 hours per week at Bellingrath and was located in another county during the rest of the week; his replacement was, according to defendants, available at the school on a more regular basis. Defendants claim their decision had nothing to do with Harris's military status.

Defendants' stated reason is a legitimate reason to change Harris's position. However, Harris has submitted evidence that defendants' stated reason is not the real reason they removed him. Most importantly, there is evidence that Williams admitted that Harris's military status played a major role in the decision to remove him from the head coach position; this directly contradicts defendants' contention that Harris was removed due to poor student-participation rates. Harris also contends that his replacement was not "on-site" more than he; they both worked 20 hours per week. Therefore, a genuine issue of material fact remains unresolved regarding defendants' true motivations for their action. In other words, a reasonable juror could certainly conclude that, in light of all the evidence, defendants would not have made the decision to remove Harris but for his military obligations.

### b. Vacation Time and Military Pay

■ Harris contends that he was forced to use accrued vacation time, instead of the military-leave time he was entitled to, when he was called for reserve duty in March 2003.

Defendants do not address whether they had a legitimate reason for denying Harris his vacation pay, if indeed they did so; in fact, they do not submit any evidence regarding this. Instead, they argue that this court does not have jurisdiction over this claim because USERRA states that, "[i]n the case of an action against a State (as an employer) by a person, the action may be brought in a State court of competent ju-

risdiction in accordance with the laws of the State." 38 U.S.C.A. § 4323(b)(2).

Defendants are mistaken regarding their assertion that this court does not have jurisdiction. A suit against a municipality is not the same as a suit against the State; a suit against a municipality is considered a suit against a private employer, 38 U.S.C.A. § 4323(j) ("In this section, the term 'private employer' includes a political subdivision of a State"), and, "[i]n the case of an action against a private employer by a person, the district courts of the United States shall have jurisdiction of the action." 38 U.S.C.A. § 4323(b)(3). Because the City of Montgomery is a municipality, this court has jurisdiction to hear Harris's claim. And because this is the only defense asserted regarding the military-leave issue, this claim also survives summary judgment.

### c. Merit–Based Raise

■ Harris contends that, due to a poor evaluation of him by Green, he was denied a merit-based raise, that is, a raise rewarding good work, and that this evaluation was motivated either by Harris's reserve status or was in retaliation for his having filed a complaint regarding his other claims under USERRA; Harris's complaint and briefs do not clarify whether he is contending that the poor evaluation was the result of discrimination, retaliation, or both. However, because the analysis required to decide defendants' summary-judgment motion does not depend on which type of claim Harris asserts, the court need not, at this time, determine which of these two claims Harris is attempting to assert.

Green did give Harris an extremely poor evaluation on April 2, 2003; but just three days earlier, Green wrote a memorandum to Athletic Director Williams, recommending Harris for a merit-based increase and praising Harris's work. The two memo-

randa are so different from one another that it is hard to imagine that they were written by the same person. Peculiarly, none of the parties explains what, if anything, happened in those three days to cause Green to change his position so drastically.

Defendants assert that Harris was neither discriminated nor retaliated against because, even though he did receive a negative evaluation, he was never denied a merit-based raise. According to defendants, the pay system that allowed for merit-based raises is relatively new; it was implemented in October 2002. Harris contends that, under this new pay system, he was eligible for a merit-based raise in April 2003, on the anniversary of his promotion to the position of Leader I; defendants say he was not due for a merit raise until June 13, 2003, which is the anniversary of the date he was originally hired. Defendants state that Green recommended Harris for a merit raise on March 31, 2003 (through the earlier, positive memorandum) because he mistakenly believed that Harris's merit increase was measured from the date of his promotion and not from the date he was hired, and Athletic Director Williams mistakenly relied on Green's recommendation when Williams sent a memorandum to the Assistant Director of Parks and Recreation stating that he also recommended Harris for a merit-based increase. According to defendants, the recommendation was later "voided," although it is unclear whether it was Williams, Green, or someone else altogether who voided the recommendations.[8]

Furthermore, according to defendants, the pay system allowed for merit-based raises every 12 months an employee actually worked, measured from the anniversary of the date he was hired. Harris did not work, for non-military reasons, from June to August 2003. According to defendants, his date for a merit-based raise was pushed back to August 29, 2003, because "Mr. Harris, along with the other part-time recreation employees, worked only nine months out of the year and the annual merit raise system required that the employee work for an entire year before being eligible for the next step increase."[9] Therefore, "[t]he new merit raise date, then, for Mr. Harris would have to be pushed from June 14, 2003 (the original hire date) to August 29, 2003 to account for his three month absence during the summer."[10]

In fact, Harris was not given this increase until October 24, 2003, but he received back pay, making his raise effective August 29, 2003. Harris submits a personnel form that confirms that his raise became effective August 29, 2003. The form, entitled "Recommendation for Personnel Action" form, and dated October 28, 2003, states: "Employee was due a merit increase on 8/29/03 and did not receive due to his merit date was changed and the computer did not generate a merit sheet for this date. Therefore we owe him in back pay of $ 68.14."[11]

Harris responds that the October 2003 raise was "across the board" and not merit-based. He believes that, in addition to the October 2003 raise, he should have been given a merit raise on March 31, 2003.[12] He submits a memorandum from the Athletic Director Williams (Green's supervisor) to the Assistant Director of

**8.** Defendants' submission to pretrial issue, filed April 23, 2004 (Doc. no. 36).

**9.** *Id.*

**10.** *Id.*

**11.** Plaintiff's supplemental response for pretrial issues, filed April 26, 2004 (Doc. no. 37), exhibit 2.

**12.** Plaintiffs' supplemental response for pretrial issues, filed April 26, 2004 (Doc. no. 37).

Parks and Recreation, dated March 31, 2003, recommending Harris for a merit-based increase. This was apparently based on Green's first memorandum to Williams, also dated March 31, 2003, which recommended Harris for a merit-based raise.

While there is no dispute that Harris actually received a merit-based raise, applied retroactively to the end of August 2003, there is still a factual dispute (indeed, great confusion) as to when Harris was, in fact, eligible for a merit-based raise and, more specifically, whether he was eligible in March or April 2003.

The events and explanations surrounding the treatment of Harris's merit-raise request are, at best, greatly confusing and even inconsistent. First, there is the compelling fact that both Athletic Director Williams and Bellingrath Community Center Director Green recommended Harris for a merit raise at the end of March 2003. Second, defendants' belated explanation in this lawsuit that he should have received the raise in June 2003 is inconsistent with Williams's and Green's recommendation. While defendants argue that both Williams and Green were mistaken, whether they were, in fact, mistaken is a disputed issue of fact that defeats summary judgment. Third, moving the June 2003 date to August 2003, as defendants say they did, would not increase the time Harris had worked because Harris did not work during the summer; if, as defendants contend, the anniversary date is the date of hire, that date would be June 2003, before his absence. Finally, defendants state that employees had to work a full 12 months before becoming eligible for a pay raise. Assuming such a rule was applied correctly, Harris would not have been eligible until October or November 2003. This is because Harris does not work during the summer; he works only nine months out of

every 12 months. Specifically, Harris would have worked only approximately nine months, from August 2002 until the beginning of June 2003. Then he was on leave for three months. Upon returning in August 2003, he would have had to work an additional three months to make up for the time he was on leave. He would not have worked a full 12 months until October or November 2003. Defendants, however, did not comply with this alleged requirement, for they gave Harris a raise retroactive to August 2003. These inconsistencies in reasons and applications, in conjunction with Williams's alleged statement that Harris's military service played a factor on one occasion in his treatment of Harris, is additional evidence from which a jury could infer that the denial of the merit-based raised was motivated by discrimination. *Sheehan v. Department of Navy*, 240 F.3d 1009, 1014 (Fed.Cir.2001). ("Discriminatory motivation under the USERRA may be reasonably inferred from a variety of factors, including . . . inconsistencies between the proffered reason and other actions of the employer."); *cf. Bass v. Board of County Com'rs, Orange County, Fla.*, 256 F.3d 1095, 1108 (11th Cir.2001) ("An employer's violation of its own normal hiring procedure may be evidence of pretext.").

Considering the conflicting recommendation and censure Harris received from Green just three days apart from each other, it is possible that, if Harris was eligible, the second evaluation from Green prevented him from receiving a raise. Because no party has submitted a policy handbook or citation to rules or regulations governing the timing of merit-based raises, and because defendants' explanations are internally inconsistent, a genuine factual dispute remains regarding whether or not Harris was eligible for a merit-based raise in April.[13]

---

**13.** The court notes that, if Harris were eligible for a merit-based raise in April 2003, then

## B. FIFTH AMENDMENT

Harris contends that he requested a hearing before the City of Montgomery Personnel Department on his discrimination claim and that a hearing was denied in violation of his right to procedural due process. First, Harris does not have any claim for a violation of procedural due process under the Fifth Amendment because he is not a federal employee. He should have brought this claim under the Fourteenth Amendment.

More importantly, axiomatic to a due process violation is some sort of property right. Harris did not have a property right in the position of head coach versus assistant coach. He did not suffer any pecuniary damage. The change in his status, absent any tangible deprivation, is not enough to rise to the threshold of a constitutional violation. As the Eleventh Circuit Court of Appeals explained: "When reviewing a due-process claim, the threshold question is whether plaintiffs were deprived of a protected property or liberty interest.... Because we continue to be unwilling to hold that a transfer, which involves no loss of pay and no loss of rank, deprives a plaintiff of a protected liberty or property interest, we conclude that plaintiffs have alleged no procedural due-process violation on this point." *Oladeinde v. City of Birmingham,* 963 F.2d 1481, 1486 (11th Cir.1992).

## C. NINTH AMENDMENT

At the pretrial conference, Harris's counsel informed the court that Harris was abandoning his Ninth Amendment claim, although Harris has not submitted an amended complaint. Moreover, even if Harris had not abandoned it, summary judgment must be granted on this claim.

The Ninth Amendment is not a source of substantive rights, but rather "serves as a savings clause which provides protection against the lowering, degrading or rejecting of any rights not specifically mentioned in the first eight amendments." *O'Donnell v. Village of Downers Grove,* 656 F.Supp. 562, 568–69 (N.D.Ill.1987). A Ninth Amendment claim, therefore, must be based on a fundamental right implicitly guaranteed by the Ninth Amendment. Harris has not identified such a right.

## D. FOURTEENTH AMENDMENT

Harris's Fourteenth Amendment equal-protection claim, that he was discriminated against because of his military status, is identical to his USERRA claim. Because USERRA provides a comprehensive remedial scheme for discrimination on the basis of military service, Harris's Fourteenth Amendment claim, if such a claim exists, is redundant.

## III. CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

(1) The motion for summary judgment, filed by defendants City of Montgomery, Curtis Green and James Williams on January 23, 2004 (Doc. no. 18), is again denied as to plaintiff Gregory Harris's claims under the Uniform Services Employment and Reemployment Rights Act, 38 U.S.C.A. § 4311.

(2) The motion is granted in all other respects.

---

several other issues must be determined. A jury must determine if Harris was denied the raise because of Green's second report, and Harris must show that this evaluation was motivated by either discrimination relating to Harris's status in the army reserve or by retaliation against Harris for lodging his original claims of discrimination.