**PUBLISHED**

# UNITED STATES COURT OF APPEALS

### FOR THE FOURTH CIRCUIT

CHERYL P. FRANCIS,
            *Plaintiff-Appellant,*

v.

BOOZ, ALLEN & HAMILTON,
INCORPORATED,
            *Defendant-Appellee.*

No. 05-1523

RESERVE OFFICERS ASSOCIATION,
      *Amicus Supporting Appellant.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, District Judge.
(CA-04-669-1)

Argued: March 16, 2006

Decided: June 22, 2006

Before WILKINS, Chief Judge, and NIEMEYER and
DUNCAN, Circuit Judges.

Affirmed by published opinion. Judge Duncan wrote the opinion, in
which Chief Judge Wilkins and Judge Niemeyer joined.

**COUNSEL**

**ARGUED:** Adam Augustine Carter, NOTO & OSWALD, P.C.,
Washington, D.C., for Appellant. Stephen William Robinson,

MCGUIREWOODS, L.L.P., McLean, Virginia, for Appellee. **ON BRIEF:** R. Scott Oswald, THE EMPLOYMENT LAW GROUP, P.L.L.C., Washington, D.C., for Appellant. David L. Greenspan, MCGUIREWOODS, L.L.P., McLean, Virginia, for Appellee. Samuel F. Wright, RESERVE OFFICERS ASSOCIATION, Washington, D.C., for Amicus Supporting Appellant.

---

## OPINION

DUNCAN, Circuit Judge:

This appeal requires us to consider the parameters of the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C.A. §§ 4301-4333 (West 2002 & Supp. 2005) ("USERRA"), enacted by Congress to protect the employment and reemployment rights of veterans. Cheryl Francis brought suit against her former employer, Booz, Allen & Hamilton, Inc. ("BAH"), alleging discrimination, wrongful termination, and retaliation in violation of USERRA. The parties filed cross-motions for summary judgment. On April 22, 2005, the district court granted summary judgment to BAH on all counts, denying Francis' motion and dismissing her complaint with prejudice. Francis timely appeals. For the reasons that follow, we affirm.

### I.

Given the procedural posture of this case, we summarize the facts in the light most favorable to Francis. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996). Francis began working for BAH in Crystal City, Virginia in 1996 and was promoted to a position as a Level II Senior Consultant in 2000. Until March 2003, Francis worked as a computer technician pursuant to a contract with one of BAH's clients, the Office of Solid Waste and Emergency Response ("OSWER") of the Environmental Protection Agency ("EPA"). Francis performed a variety of functions as required by OSWER, categorized by BAH as Tier I (low-level call center work), Tier II (face-to-face work and higher-level problem solving), or Tier III (networking assistance). Because of the nature of the work, Francis

performed most Tier I tasks at her desk and most Tier II and III assignments elsewhere. Her usual workday was from 8:00 A.M. until 4:30 P.M., though she would, depending on OSWER's needs, sometimes work the late shift from 10:00 A.M. to 6:30 P.M. During the performance of these duties, Francis engaged in some conduct that BAH found unprofessional and for which Francis was formally reprimanded several times in 2002.

During the time of her employment with BAH, Francis was also a petty officer in the United States Naval Reserves. As part of her military obligation, she was deployed on full-time active duty beginning March 16, 2003. Following her discharge from active duty, Francis resumed her duties at BAH on August 11, 2003. It is undisputed that Francis retained the same title, salary, consulting engagement, and work location upon her return.

There were, however, certain changes in Francis' responsibilities and work schedule following her return from deployment. First, although Francis continued to perform a mix of Tier I and Tier II work, she performed almost no Tier III work. This change resulted from EPA's decision to consolidate its network operations and transfer the maintenance and administration of OSWER's network to another vendor. By the time Francis returned from deployment, this consolidation was nearly complete, and no one at BAH performed substantial Tier III work on the OSWER contract.

A second change related to Francis' work schedule. On August 28, BAH informed her that she would be permanently assigned to the late shift.[1] Unbeknownst to BAH, this revision created a conflict with evening undergraduate classes in which Francis had enrolled on August 26, 2003. Francis, however, arranged for various supervisors and coworkers to replace her when her work schedule conflicted with her classes. Francis did not miss any classes as a result of her new schedule. She did, however, inform BAH on August 29 that she believed that her USERRA rights were being violated.

---

[1]From August 11, 2003, until August 28, 2003, Francis worked her pre-deployment schedule from 8:00 A.M. until 4:30 P.M. with occasional late-shift work on an as-needed basis.

Upon her return, Francis engaged in certain behavior which BAH found objectionable. For example, on various occasions, she left work early without authorization. She was also absent from a team conference call. A manager claimed to observe her slamming down the phone after exchanges with customers. Co-workers lodged various complaints with the Department Project Manager regarding Francis' behavioral and attendance issues. BAH believed that Francis' actions violated BAH's "Core Values"—an employee conduct policy that provides the framework of professional behavior for dealing with clients and colleagues at BAH. Consequently, on November 14, 2003, BAH issued Francis a Notice of Probation, which warned Francis that "failure to immediately address these issues would result in termination of . . . employment." J.A. at 276. BAH based this decision on Francis' conduct both pre-deployment and post-deployment. BAH subsequently provided Francis with a plan for improvement wherein Francis was put on notice that unless she displayed "immediate, substantial, and sustained progress . . . termination of employment [would] occur." J.A. at 431.

Less than two weeks after receiving the Notice of Probation, Francis again left the office without authorization in order to attend to a customer at an off-site location. On December 15, 2003, BAH terminated Francis' employment, and this action followed.

## II.

### A.

We review the district court's grant of summary judgment de novo. *Evans*, 80 F.3d at 958. We apply the same legal standards as the district court and uphold the summary judgment only if the evidence, viewed in the light most favorable to the non-moving party, entitles the moving party to judgment as a matter of law. *Id.*

### B.

Francis brings three claims under USERRA, which we will examine in turn. She first claims that BAH discriminated against her in violation of both §§ 4311(a) and 4312. Section 4311(a) provides that "[a]

person [such as Francis] shall not be denied . . . any benefit of employment by an employer on the basis of [her membership in the armed services]." § 4311(a). Under § 4312(a), "any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits of [USERRA]." § 4312(a). Francis' discrimination claim alleges that BAH denied her "reemployment rights" in violation of § 4312 and "benefits of employment" in violation of § 4311.

Francis' second claim alleges improper discharge in violation of § 4316(c) of USERRA, which states in relevant part that "[a] person who is reemployed by an employer under [USERRA] shall not be discharged from such employment, except for cause . . . ." § 4316(c).

Finally, Francis' third claim alleges improper retaliation in violation of § 4311(b) of USERRA, which prohibits employers from "tak[-ing] any adverse employment action against any person because such person has taken an action to enforce a protection afforded any person under [USERRA], . . . or has exercised a right provided for in [USERRA]." § 4311(b) (internal numeration omitted). Specifically, Francis' third claim alleges that BAH dismissed her in violation of this section because she indicated her desire to exercise her rights under USERRA. For the reasons stated below, we hold that the district court properly granted summary judgment to BAH on all three claims.

## C.

### 1. Claim One—Discrimination

Francis first argues that the district court erred in holding that BAH did not discriminate against her in violation of USERRA with respect to the changes in her work schedule and responsibilities. Although Francis alleges discrimination under both §§ 4311 and 4312, the procedural requirements of the two provisions differ. An employee proceeding under § 4311 has the burden of proving that the employer discriminated against him or her based on a status or activity protected by USERRA. 20 C.F.R. § 1002.22 (2006). Section 4312

imposes no such burden. 20 C.F.R. § 1002.33 (2006). We consider Francis' claims under both provisions.[2]

We begin by noting that, "[b]ecause USERRA was enacted to protect the rights of veterans and members of the uniformed services, it must be broadly construed in favor of its military beneficiaries." *Hill v. Michelin N. Am., Inc.*, 252 F.3d 307, 312-13 (4th Cir. 2001). In addition, while USERRA is a relatively recent statutory scheme, we can and should use relevant pre-USERRA case law as a guide toward understanding USERRA: "[i]n enacting USERRA, Congress . . . emphasized that Federal laws protecting veterans' employment and reemployment rights for the past fifty years had been successful and that the large body of case law that had developed under those statutes remained in full force and effect, to the extent it is consistent with USERRA." 20 C.F.R. § 1002.2 (2006).

"The first step in determining the meaning of a statute is to examine the statute's plain language. In doing so, we look at 'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" *United States v. Andrews*, 441 F.3d 220, 222 (4th Cir. 2006)(internal citation omitted) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). USERRA provides a multi-tiered and "comprehensive remedial scheme to ensure the employment and reemployment rights of those called upon to serve in the armed forces of the United States." *Morris-Hayes v. Bd. of Educ.*, 423 F.3d 153, 160 (2d Cir. 2005) (discussing USERRA in the context of Section 1983 claims). We analyze this comprehensive scheme holistically, careful to interpret each section in a manner that does not render any other sections inconsistent or superfluous. *See Soliman v. Gonzales*, 419 F.3d 276, 283 (4th Cir. 2005). With this guidance in mind, we consider the relevant statutory sections.

---

[2]There is some dispute over whether Francis properly raised the applicability of § 4312 in the district court. If she did not raise the issue in the district court, then we cannot consider it here under the longstanding rule that "issues raised for the first time on appeal generally will not be considered." *Muth v. United States*, 1 F.3d 246, 250 (4th Cir. 1993). After reviewing the record of the proceedings below, we conclude that Francis preserved her arguments under § 4312 and will, accordingly, fully consider those arguments here.

### a.  Section 4312

#### i.

In relevant part, § 4312 states that "any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits of [USERRA]." § 4312(a). Francis argues that § 4312 protects her from discrimination with respect to the terms and conditions of employment after she has been rehired. Conversely, BAH argues that the "reemployment" rights protected by §§ 4312 and 4313 apply only at the instant of reemployment, and that other sections of USERRA operate to protect employees after they are properly reemployed under §§ 4312 and 4313. We find BAH's interpretation to be more faithful to the statutory framework.

As noted above, § 4312 is part of a comprehensive statutory scheme and must be read in context with the rest of USERRA—specifically, for purposes of our analysis, §§ 4311 and 4316. "Section 4312 provides that any person whose absence from a position of employment is necessitated by service in the uniformed services is entitled to reemployment rights." *Warren v. IBM*, 358 F.Supp.2d 301, 310 (S.D.N.Y. 2005). Section 4311 prohibits discrimination with respect to any benefit of employment against persons who serve in the armed services after they return from a deployment and are reemployed. *See id.* at 309-10. Finally, § 4316 converts the otherwise at-will employment status of covered individuals to one in which they are protected from dismissal except for cause for a period of time. *Id.* at 310.

In short, § 4312 requires an employer to rehire covered employees; § 4311 then operates to prevent employers from treating those employees differently after they are rehired; and § 4316 prevents employers from summarily dismissing those employees for a limited period after they are rehired. While combining to form comprehensive protection from the point of rehire to untimely dismissal, each provision is nonetheless functionally discrete. As one court has noted,

> Section 4312 serves only to guarantee service persons' reemployment without question as to the employer's intent.

> This interpretation is in keeping with congressional intent in enacting the USERRA. Finding existing veteran's right statutes overly complex and ambiguous, leaving veterans and employers confused as to their rights and responsibilities, Congress acted "to clarify, simplify, and where necessary, strengthen the existing veterans' employment and reemployment rights provisions." *Lapine v. Town of Wellesley*, 970 F. Supp. 55, 58, fn.2. (D. Mass. 1997). Section 4312 places service people and employers on notice that, upon returning from service, veterans are entitled to their previous positions of employment. After being reemployed, the service person is protected by §§ 4316(c) and 4311.

*Jordan v. Air Prods. & Chems., Inc.*, 225 F.Supp.2d 1206, 1208 (C.D. Cal. 2002). Put more simply, § 4312 "only entitles a service person to immediate reemployment and does not prevent the employer from terminating him the next day or even later the same day." *Id.* The apparent harshness of this result is addressed by the fact that §§ 4311 and 4316 operate to protect the employee as soon as she is reemployed.

Francis' interpretation of § 4312 as requiring BAH to provide "*all* of the rights and benefits afforded to her under USERRA" with no temporal limitation (appellant's Reply Brief at 15, emphasis in original) would render §§ 4311 and 4316 superfluous. If § 4312 provided ongoing protection after reemployment, it would subsume the specific guarantees of §§ 4311 and 4316. "[W]e are 'loath' to read one statutory provision so as to render another provision of the same statute superfluous." *Gonzales*, 419 F.3d at 283 (quoting *Cooper Indus. v. Aviall Servs., Inc.*, 543 U.S. 157 (2004)). Congress carefully constructed USERRA to provide comprehensive protection to returning veterans, while balancing the legitimate concerns of employers. We will not upset that balance and render USERRA sections meaningless by adopting the overly broad interpretation of § 4312 that Francis seeks. We therefore hold that § 4312 applies to protect a covered individual only as to the act of rehiring.

*ii.*

We now decide whether BAH violated § 4312 when it reemployed Francis. Section 4312 states that BAH had to provide Francis with

both "reemployment rights" and "employment benefits." Under its terms, BAH must reemploy Francis in either "the position of employment in which [she] would have been employed if [her] continuous employment . . . with [BAH] had not been interrupted by [military] service, or a position of like seniority, status and pay, the duties of which [Francis] is qualified to perform." § 4313(a)(2)(A) (defining the rights provided by § 4312). In addition, BAH was required to rehire Francis with her "employment benefits," which include, in relevant part, "any advantage, profit, or privilege . . . that accrues by reason of an employment contract or agreement . . . [including] . . . the opportunity to select work hours or location of employment." § 4303(2). We conclude that BAH complied with both of these requirements.

The undisputed evidence demonstrates that Francis was rehired with the same title, salary, consulting engagement, and work location upon returning. The actions Francis complained of occurred significantly *after* her return to BAH in August of 2003. Accordingly, they fall outside of § 4312's scope. Specifically, Francis' work hours were not changed until several weeks after she was rehired. She further admitted during her deposition that changes in her job responsibilities occurred in late October, 2003.[3] In view of Francis' failure to present

---

[3]At her deposition, Francis noted that her pre-deployment job responsibilities involved "setting up the user accounts administratively wise, deletions, managing the disk space, performing upgrades, [and] desktop upgrades." J.A. at 523. She later acknowledged that she had these same responsibilities after returning from deployment:

Q. Now when you returned to work, when you returned after deployment, were you doing the administrative deletions and additions?

A. Yes, I was.

Q. Were you doing the user account work after you returned from deployment?

A. Yes, I was.

Q. Were you doing the disk-based management when you returned from deployment?

A. Yes, I was.

any evidence that BAH improperly denied her either "reemployment rights" or "employment benefits" at the time it rehired her, we hold that § 4312 does not provide Francis with relief on her discrimination claim.

### b. Section 4311

#### i.

We now consider whether § 4311 provides Francis with any relief on her discrimination claim. Section 4311(a) states that "a person [such as Francis] shall not be denied . . . any benefit of employment by an employer on the basis of [her membership in the armed services]." § 4311(a). As noted above, USERRA defines "benefit of employment" in relevant part as "any advantage, profit, [or] privilege . . . that accrues by reason of an employment contract or agreement . . . [including] . . . the opportunity to select work hours or location of employment." 38 U.S.C. § 4303(2). Our analysis is guided by the fact that an employer shall be considered to have engaged in prohibited conduct under § 4311(a) only if the employee's military status is a "motivating factor." § 4311(c)(1).

#### ii.

Francis first contends that, after being reemployed as a Level II Senior Consultant, she was gradually given more Tier I work than she had pre-deployment and was no longer given any Tier III work. Therefore, Francis contends, even though her job title and salary

---

Q.  Were you doing the computer and software upgrades when you returned from deployment?

A.  Yes, I was, initially.

Q.  When did that stop, the upgrades?

A.  Gradually my duties and responsibilities were further reduced, and I was designated to just only do call center, answering the phone.

J.A. at 524-25.

remained the same, she was effectively demoted. *See generally Harris v. City of Montgomery*, 322 F.Supp. 2d 1319, 1323 (M.D. Ala. 2004) (noting that a significant change in job responsibilities, even when pay and title remain the same, can create a jury question as to whether a "benefit of employment" had been denied). The district court responded to this argument, noting that

> [Francis] offers no support, beyond her own conclusory opinions, for the contention that her status and duties were changed and that such changes constituted the denial of a benefit of employment. . . . [Francis]' own deposition testimony reveals that she performed nearly identical duties before and after her deployment, that is, providing both Tier I and Tier II support (in the Call Center).

*Francis v. Booz Allen Hamilton, Inc.*, 2005 U.S. Dist. LEXIS 8159 at *8. We agree with the district court. The evidence viewed in the light most favorable to Francis does indicate that the relative amount of Tier I, II, and III work that Francis received post-deployment differed from her pre-deployment workload. This difference, however, was extremely slight and simply a continuation of her pre-deployment work patterns—which always involved a mix of Tier I, II, and III work depending on client needs, as did the responsibilities of other employees.

Francis' deposition testimony indicates that she performed Tier I and Tier II duties both before and after deployment. J.A. 502-03, 515-16 (noting that she performed Tier I duties both before and after deployment); 518-20 (acknowledging that she performed Tier II duties after returning from deployment). In addition, the reduction of Tier III work began before Francis was deployed, was a direct result of the change in the OSWER contract, and applied to all employees in Francis' position. In response to this evidence, Francis provides naked speculation and open-ended rhetorical questions. *See* Appellant's Brief at 22 (noting that it is "hard to believe" that Tier III work was not available anywhere within BAH); 25 n.5 (asking, but not answering, "How many other jobs within BAH on other contracts or locations required mainly Tier II type work?"). In short, the district court correctly held that, viewing the evidence in the light most favorable to Francis, BAH did not deny Francis a benefit of employment

by altering the relative amounts of Tier I, II, and III work that she had after her return from deployment.[4]

### iii.

Francis next contends that BAH denied her a benefit of employment by changing her work schedule, making it difficult for her to attend evening classes. USERRA expressly states that "the opportunity to select work hours" constitutes a protected benefit of employment. § 4303(2). In addition, we have held that a more favorable working schedule "is, in and of itself, a benefit of employment." *Hill*, 252 F.3d at 313.

The district court dismissed Francis' claim, holding that a two-hour schedule change, which did not change the total number of hours worked and which Francis had previously worked without objection, was not significant enough to constitute the denial of a benefit of employment. We need not decide whether the schedule adjustment, on these facts, deprived Francis of a benefit of employment. Even if we so assume, Francis is entitled to relief under USERRA only if she can demonstrate that her military status was "a motivating factor" in her schedule change. § 4311(c)(1). While issues of improper motivation generally involve factual determinations properly left for a jury, "[m]ere conclusory allegations of motivation do not preclude sum-

---

[4]Francis cites several cases in support of the position that changed job responsibilities can constitute a denial of a benefit of employment. These cases, however, all involve situations in which the employee's new job responsibilities were drastically different from their old responsibilities. *See Harris*, 322 F.Supp.2d at 1323 (reassignment from head coach to assistant coach of the same team); *Nichols v. Dep't. of Veterans Affairs*, 11 F.3d 160, 161-63 (Fed. Cir. 1993) (chaplain was reassigned to a position in which his immediate supervisor was the person holding his old job); *Carlson v. N.H. Dep't of Safety*, 609 F.2d 1024, 1026 (1st Cir. 1979) (state trooper assigned to new troop that had no overlapping responsibilities with his original troop); *Duarte v. Agilent Techs., Inc.*, 366 F.Supp.2d 1039, 1043-46 (D. Col. 2005) (employee given a "significantly different" job in which he was transferred from a lead design consultant position to an assistant design consultant position). Francis cites no cases in which an employee whose job responsibilities changed as little as hers was found to have been denied a benefit of employment.

mary judgment." *Yarnevic v. Brink's, Inc.*, 102 F.3d 753, 757-58 (4th Cir. 1996). Francis simply presents *no* evidence, direct or circumstantial, through which a rational trier of fact could find that BAH was motivated to change her schedule because of her military service. In addition, the slight nature of the change and the fact that Francis routinely worked a similar schedule in the past provides circumstantial evidence for a conclusion that BAH's actions were not motivated by Francis' military status.[5]

Accordingly, we affirm the district court's grant of summary judgment on Francis' discrimination claim.

### 2.   *Claim Two—Improper Discharge*

Francis next argues that the district court erred in granting summary judgment to BAH on her claim of improper discharge. Specifically, she contends that she presented evidence sufficient to create a dispute over whether BAH discharged her in violation of § 4316(c). For the reasons discussed below, we hold that the district court did not err in deciding this claim on summary judgment.

Section 4316(c) temporarily changes the at-will employment status of returning veterans. For a certain period of time (dependant on the

---

[5]Francis argues as well that BAH denied her a benefit of employment by changing her physical job location. She bases this contention on the fact that, upon her rehire, she was allegedly tied to a call center desk performing Tier I tasks instead of being allowed to move around and leave the workplace. BAH argues that Francis waived this argument by not raising it in the district court. Francis counters that "at the very least," BAH and the district court "could have been put on notice" by her materials that she was raising the claim. Appellant's Reply Brief at 5.

In any event, this claim, to the extent that it is properly before us, fails. Francis acknowledges that her job location argument is "inherent in her changed responsibilities argument," i.e., that it is intertwined with the difference between Tier I (which requires the employee to remain at the call center desk) and Tier II work (which allows employees some freedom of location in performing the job). Appellant's Reply Brief at 5. We agree with her assessment that this is no more than a restatement of the work responsibilities argument that we have previously rejected.

veteran's length of military service), an employer cannot discharge the returning veteran "except for cause." § 4316(c). "In a discharge action based on conduct, the employer bears the burden of proving that it is reasonable to discharge the employee for the conduct in question, and that he or she had notice, which was express or can be fairly implied, that the conduct would constitute cause for discharge." 20 C.F.R. § 1002.248(a) (2006). Because employers have the burden of proving that the discharge was reasonable, it is difficult for employers to achieve summary judgment on claims under § 4316(c). *See Alan's of Atlanta, Inc. v. Minolta Corp.*, 903 F.2d 1414, 1425 (11th Cir. 1990) ("As is well established, in a summary judgment proceeding the party against whom the burden of proof falls at trial faces a challenge more difficult than otherwise."). As in all summary judgments, however, the non-moving party must still provide evidence sufficient to create an issue for trial. Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law. *See Felty v. Graves-Humphrys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987).

In this case, the evidence of Francis' misconduct at BAH is overwhelming and largely uncontroverted. She arrived late for work and left early without permission. She missed scheduled conference calls. She acted inappropriately to customers and co-workers—engendering complaints about her behavior and professional attitude from several of the latter. She left her work station without permission. Supervisors found her to be evasive, non-responsive, and uncommunicative.

Francis does submit an affidavit in the record in which she indicates that she believed that she was acting professionally and in accordance with the Core Values during her time at BAH. J.A. at 1044-45. Even viewing this affidavit in the light most favorable to Francis, however, it does not create a dispute of material fact sufficient to survive summary judgment. The operative legal question is not whether Francis believed that her dismissal was reasonable or that she was acting professionally. The operative question is whether, based on the undisputed evidence in the record, it was objectively reasonable for BAH to dismiss Francis. In this case, the undisputed evidence indicates an extensive pattern of unprofessional misconduct taking place over the course of years, well documented by BAH, and

reported to BAH management from a wide variety of co-workers and other sources. This pattern of misconduct provides a sufficient legal basis to justify Francis' dismissal—despite Francis' subjective views of her actions. *See generally Goldberg v. B. Green & Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988) (noting that opinions and conclusory assertions are not sufficient to survive summary judgment).[6]

It is also undisputed that Francis had notice that her misconduct was cause for discharge. Francis' Notice of Probation expressly indicated that "this matter is to be taken with extreme seriousness and you should understand fully that your failure to immediately address these issues would result in termination of your employment." J.A. at 429. The Notice of Probation detailed specific instances of misconduct to be corrected: failing to display a positive demeanor and respond to simple courtesies by her co-workers, failing to utilize the established process for late arrivals or absences, repeatedly refusing to do work assigned by her managers, storming out of the office after meetings, slamming down the phone on customers, and refusing to let co-workers know, as required by BAH policy, when she was going to be away from her desk. J.A. at 429-30. Finally, the Notice indicated what remedial actions Francis could take in order to avoid dismissal. This detailed statement, which Francis acknowledges receiving, constitutes notice sufficient to meet BAH's burden under § 4316(c).

In short, the evidence of record reflects a systematic history of professional misconduct and a refusal to correct that misconduct when BAH brought it to Francis' attention. BAH, therefore, had cause to terminate Francis pursuant to § 4316(c), and we hold that the district court did not err in granting summary judgment to BAH on this claim.

### 3.   Claim Three—Retaliation

Finally, Francis argues that BAH retaliated against her in violation of § 4311(b) by terminating her after she informed BAH on August, 29, 2003, that she believed that her USERRA rights were being vio-

---

[6]Though Francis' opinion on the matter is not dispositive, we note that Francis herself, at deposition, acknowledged the reasonableness of the expectations that BAH had concerning her conduct and its relation to the Core Values. J.A. at 544-46.

lated. In order to succeed on this claim, Francis must demonstrate that her exercise of her USERRA rights was "a motivating factor in [BAH's] action, unless [BAH] can prove that the action would have been taken in the absence of" Francis' USERRA complaints. § 4311(c)(2).

Francis relies exclusively on the "temporal proximity" between her August 28 complaint and November Notice of Probation to prove that her exercise of USERRA rights was a motivating factor in the decision to terminate her. While temporal proximity between a complaint and an adverse employment action can, in some cases, be used to survive summary judgment, it does not suffice here. *See Sheehan v. Dep't of the Navy*, 240 F.3d 1009, 1014 (Fed. Cir. 2001) (noting that temporal proximity is one of a "variety of factors" that courts can use to determine improper motivation under USERRA). The actions that led to Francis' probation and termination began *before* her protected activity, belying the conclusion that a reasonable factfinder might find that BAH's activity was motivated by Francis' USERRA complaints. "Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001); *see also Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 67 (1st Cir. 2002) (noting that conduct that occurs both before and after the event leading to the alleged retaliation cannot form the basis of a Title IX retaliation claim).

In short, no reasonable factfinder could conclude, based solely on the evidence in the record, that BAH's actions against Francis were taken in retaliation for the exercise of her rights under USERRA. Accordingly, we affirm the district court's grant of summary judgment to BAH on the retaliation count.

III.

In conclusion, we hold that the district court did not err in granting summary judgment to BAH on all three of Francis' claims. The undisputed evidence demonstrates that BAH did not improperly deny Francis reemployment rights or a benefit of employment. In addition,

BAH dismissed Francis for cause, and did not retaliate against Francis in violation of USERRA. The judgment of the district court is

*AFFIRMED*.