*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 12a0226p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT
————————————

BRIAN PETTY,
     *Plaintiff-Appellee/Cross-Appellant,*

     *v.*

METROPOLITAN GOVERNMENT OF NASHVILLE
& DAVIDSON COUNTY,
     *Defendant-Appellant/Cross-Appellee.*

Nos. 10-6013/6105

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:05-cv-680—Todd J. Campbell, Chief District Judge.

Argued: April 19, 2012

Decided and Filed: July 24, 2012

Before: BOGGS, SUHRHEINRICH, and COOK, Circuit Judges.

————————————

## COUNSEL

**ARGUED:** Kevin C. Klein, METROPOLITAN DEPARTMENT OF LAW, Nashville, Tennessee, for Appellant/Cross-Appellee. Michael J. Wall, BRANSTETTER, STRANCH & JENNINGS, PLLC, Nashville, Tennessee, for Appellee/Cross-Appellant. **ON BRIEF:** Kevin C. Klein, METROPOLITAN DEPARTMENT OF LAW, Nashville, Tennessee, for Appellant/Cross-Appellee. Michael J. Wall, James G. Stranch III, BRANSTETTER, STRANCH & JENNINGS, PLLC, Nashville, Tennessee, for Appellee/Cross-Appellant.

————————————

## OPINION

————————————

     COOK, Circuit Judge. This Uniformed Services Employment and Reemployment Rights Act ("USERRA") case returns to the Sixth Circuit after remand to the district court. *Petty v. Metro. Gov't of Nashville-Davidson Cnty.* (*Petty I*), 538 F.3d 431 (6th Cir. 2008). USERRA guarantees returning veterans reemployment

1

with their former employers and prohibits employers from discriminating against veterans based on their military service. 38 U.S.C. §§ 4301–4335. Appellee/Cross-Appellant Brian Petty claims that Appellant/Cross-Appellee Metropolitan Government of Nashville-Davidson County ("Metro") violated USERRA in its treatment of him after he returned to Metro's police department from active duty in the United States Army. First, Petty argues that Metro failed to restore him to his former position of patrol sergeant in violation of §§ 4312 and 4313, USERRA's "reemployment provisions." Second, Petty argues that Metro discriminated against him on the basis of his military service in violation of § 4311, USERRA's "discrimination provision."

On remand, the district court granted summary judgment in favor of Petty on his reemployment claims and ordered Metro to reinstate him to his former position as a patrol sergeant. After a bench trial, the district court awarded Petty back pay and partial liquidated damages on his reemployment claims and ruled in his favor on his discrimination claim. Metro appeals, and Petty cross-appeals. We AFFIRM the district court's rulings.

I.

*Petty I*, which remanded this matter to the district court for further proceedings, recounts the factual background of this case in detail. 538 F.3d at 434-38. Assuming familiarity with *Petty I*, we offer an abbreviated factual background and then review the proceedings on remand that led to this appeal.

*A. The Factual Background*

Metro hired Petty as a police officer in 1991. By 2002, Petty achieved the rank of patrol sergeant and supervised other officers within the police department. To supplement his income as a police officer, Petty also moonlighted as a security guard at two local restaurants.

In addition to these two positions, Petty served as a member of the Army National Guard. He joined in 1986 and opted into the Army reserve in 1989. In 2003, the Army deployed Petty for service in Operation Iraqi Freedom. Petty's military

commitments forced him to stop working at Metro in November 2003, and the Army transferred Petty and his unit to Kuwait around February 2004.

After he arrived in Kuwait, Petty's commanding officer caught him brewing homemade wine and sharing it with another soldier in violation of military rules. Petty offered an innocent explanation for the wine, but ultimately resigned his commission to avoid facing court-martial proceedings. In January 2005, following Petty's resignation, the Army dismissed its charges against him and relieved him of his command. The Army issued Petty a DD-214, a document issued to soldiers upon discharge, indicating that his separation from the military was under honorable conditions. A separate box on the form, however, described Petty's reason for separation as "in lieu of trial by court martial."

In February 2005, Petty requested reinstatement as a police officer with Metro. As it did all police officers returning from an extended leave of absence, Metro subjected Petty to its return-to-work process. This includes, among other things, a drug screening, a personal-history-update questionnaire, and a meeting with a Police Department psychologist. Metro relies on this process to test returning officers' continuing fitness to serve in its police department.

This dispute stems from Petty's answer to the following question on his personal-history-update questionnaire: "During your absence were you arrested, charged, detained, or a suspect in any criminal action or military disciplinary action for any reason or do you have any action pending? If yes, explain in detail (use back if necessary)." Petty answered "yes" and attached a narrative explaining that he faced military charges in Kuwait. He did not, however, reveal the details of his abrupt exit from the military—namely, that he was accused of manufacturing alcohol and providing it to an enlisted soldier.

Apparently unsatisfied that Petty's response "explain[ed] in detail" his charges, the Metropolitan Police Department's Office of Professional Accountability ("OPA") launched an investigation into the veracity with which Petty completed his return-to-work paperwork. Metro has a "zero tolerance" policy for dishonesty, and it formally

issued a complaint charging Petty with dishonesty during the return-to-work process in April 2005. After investigating the charges against Petty, Lieutenant Gordon Howey prepared a report finding that the allegations against Petty lacked foundation. The Chief of Police, Ronal Serpas, and the Director of the OPA, Kennetha Sawyers, accepted Howey's conclusions. In July 2005, Sawyers sent Petty a letter informing him of the dismissal of the charges against him.

But Petty's case continued to trouble Sawyers. Wanting to learn more about the circumstances surrounding Petty's discharge from the Army, Sawyers contacted an Army representative for information. Through her investigation, Sawyers learned that Petty had submitted an incomplete DD-214 to Metro. Petty had enlarged the form that he provided to Metro on a copy machine, cutting off several boxes—including one describing his discharge from the military as "in lieu of trial by court martial." Sawyer's discovery sparked a second investigation into Petty's truthfulness, this one focusing on whether Petty intentionally altered his DD-214.

Metro never returned Petty to his pre-deployment position of patrol sergeant. Beginning in October 2005, Metro assigned Petty to the "bubble," where it primarily tasked him with answering telephone calls from the public. In December 2005, Metro denied Petty's request to resume moonlighting as a security guard. *See Petty I*, 538 F.3d at 434-38 (citing *Petty v. Metro. Gov't of Nashville-Davidson*, No. 3:05-0680, 2006 WL 3333509, at *1-5 (M.D. Tenn. Nov. 16, 2006)).

*B. Petty I*

Petty sued, alleging violations of the reemployment and antidiscrimination provisions of USERRA. He alleged that Metro violated his USERRA rights by (1) delaying his rehire for the purpose of subjecting him to Metro's return-to-work process; (2) failing to reinstate him to his previously held position; and (3) denying him permission to engage in extra-duty employment as a security guard. Both parties moved for summary judgment, and the district court granted Metro's motion on all claims except those arising from the denial of Petty's request for off-duty work. The off-duty-

work claim proceeded to a bench trial, after which the district court entered a judgment on partial findings in favor of Metro. *See id.* at 438. Petty appealed.

During the pendency of Petty's appeal, Metro continued its second investigation into Petty's suspected dishonesty. This investigation initially focused on Petty's submission of an incomplete DD-214, but evolved into an examination of Petty's veracity during Metro's return-to-work process and the OPA's initial investigation. In late 2007, Metro held a disciplinary hearing on whether Petty "submitted a materially false statement," "withheld information regarding [his] military investigation," and "attempt[ed] to conceal the terms of [his] discharge from military duty." After the hearing, Metro terminated Petty. Following Petty's termination, Metro notified the Peace Officer Standards Training ("POST") Commission of the circumstances of Petty's discharge, causing the Commission to suspend Petty's certification to work as a police officer in Tennessee.

Several months after Petty's termination, we heard oral argument on his appeal. In *Petty I*, we held that USERRA's reemployment provisions barred Metro from requiring Petty to comply with its return-to-work procedures. *See id.* at 442. We further held that Metro's delay of Petty's reemployment during its second investigation—which examined his alleged dishonesty during Metro's return-to-work process—violated USERRA's reemployment provision. *See id.* at 443-44. Because Petty qualified for reemployment, we held, USERRA required Metro to fully reemploy Petty, regardless of any honesty issues arising from Metro's return-to-work process. *Id.* at 444.

Accordingly, *Petty I* (1) reversed the district court's grant of summary judgment to Metro on Petty's reemployment claims; (2) vacated the district court's grant of judgment on partial findings to Metro with respect to Petty's discrimination claim; and (3) remanded the case to the district court with instructions to enter summary judgment in favor of Petty on his reemployment claims, to determine the damages, and to conduct further proceedings with regard to Petty's discrimination claim. *See id.* at 447.

The *Petty I* court first learned of Petty's termination at oral argument. *See id.* at 444 n.7. Accordingly, our decision in *Petty I* noted that Petty's termination might

prevent Metro from placing Petty in his original position as patrol sergeant, but left the issue for the district court to determine on remand. *Id.* When the case returned to the district court, Petty filed a supplemental complaint claiming that Metro's termination constituted discrimination and retaliation in violation of USERRA. Both parties conducted additional discovery and again filed cross-motions for summary judgment.

*C. Proceedings on Remand*

As directed by *Petty I*, the district court granted Petty summary judgment on his reemployment claims. As a remedy for the reemployment violation, the court ordered that Metro immediately reinstate Petty to his former position as patrol sergeant. In light of Petty's reinstatement, the court dismissed his newly asserted retaliation and discrimination claims as moot.

After ruling on the summary-judgment motions, the court held a bench trial to resolve three remaining issues: (1) whether Metro discriminated against Petty by denying his request to engage in extra-duty employment; (2) the appropriate amount of damages, including back pay; and (3) whether Petty was entitled to liquidated damages. At the conclusion of this trial, the district court awarded Petty $2,500 in back pay for the initial three-week delay in reemployment and $172,058.67 in back pay from the time of his termination until his court-ordered reinstatement. Further, the district court found that Metro discriminated against Petty by refusing to allow him to engage in extra-duty employment and awarded him an additional $4,500 in damages. Finally, the district court granted Petty partial liquidated damages, awarding him $120,116.43. Metro appeals, and Petty cross-appeals.

II.

On appeal, Metro challenges the district court's (1) award of reinstatement and back pay as remedies for Petty's termination under his reemployment claim; (2) finding that Metro discriminated against Petty by denying his request to engage in extra-duty employment; (3) grant of Petty's motion in limine, which excluded evidence of Petty's alleged untruthfulness from trial; and (4) award of liquidated damages. Petty cross-

appeals on this last point, arguing that the district court should have awarded him full—instead of partial—liquidated damages.  Because all of these issues concern USERRA, we begin by describing the statute's framework and purpose.

*A.  USERRA*

USERRA protects the job security of returning veterans.  *Petty I*, 538 F.3d at 439.  Several provisions of USERRA coordinate to provide this security:  Sections 4312 and 4313, the "reemployment provisions," entitle veterans to reemployment after military service and prescribe the positions to which they are entitled upon returning. 38 U.S.C. §§ 4312, 4313.  Section 4311, the "discrimination provision," prohibits employers from discriminating against veterans on the basis of their military service. 38 U.S.C. § 4311.  Finally, § 4316 guarantees veterans the same benefits they would have enjoyed absent the interruption in their employment and prevents employers from terminating without "cause" any returning veteran within one year of his reemployment. 38 U.S.C. § 4316.

The reemployment and discrimination provisions protect different phases of employment.  At the point of rehire, §§ 4312 and 4313 entitle a returning veteran to reemployment in either the position he would have held absent his departure for military service "or a position of like seniority, status and pay."  38 U.S.C. § 4313(a)(2)(A). After an employer rehires a veteran, § 4311 prohibits the employer from discriminating against the veteran with respect to "any benefit of employment."  38 U.S.C. § 4311; *see also Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 304 (4th Cir. 2006). USERRA's reemployment and discrimination provisions differ in another relevant way: a plaintiff seeking relief under the *discrimination* provision must show that his employer discriminated against him on account of his military service, but a plaintiff seeking relief under the *reemployment* provision does not.  *Petty I*, 538 F.3d at 442.  To demonstrate entitlement to reemployment, veterans need only show that they meet the reemployment provisions' four prerequisites: proper notice to his employer in advance of his departure, a service period of less than five years, a timely request for reemployment accompanied by proper documentation, and a separation from military service under "honorable

conditions." *Id.* at 440-43 (citing 38 U.S.C. § 4312). If a veteran satisfies these four prerequisites, then the reemployment provisions prohibit an employer from limiting or delaying his reemployment rights in any way. *See id.* at 442-43 (citing 38 U.S.C. §§ 4312, 4313).

B.   *The District Court's Award of Reinstatement and Back Pay Under Petty's Reemployment Claim*

Metro first argues that the district court erred in awarding back pay and reinstatement as a remedy for Petty's termination under his reemployment claim. Because Metro terminated Petty long after reemploying him, Metro argues, the district court should have analyzed Petty's claim under USERRA's discrimination provision, § 4311. Metro argues that Petty cannot show that his termination violated the discrimination provision, because Metro terminated him for *dishonesty* during its return-to-work process—not for any reason related to his protected status as a veteran. (Again, Metro's second investigation focused on Petty 's submission of an incomplete DD-214 and his veracity during the return-to-work process and first investigation.) From this, Metro concludes that the district court erred in "granting summary judgment to Petty on his termination claim."

By wrongly framing the issue, Metro's argument stumbles from the gate. The district court did not grant summary judgment to Petty on his "termination claim"; rather, the district court awarded Petty relief for his termination under his *reemployment* claim. Petty initially brought a separate claim alleging discrimination based on his termination, but the district court dismissed that claim as moot after ordering Metro to reinstate Petty. With respect to the grant of summary judgment on Petty's reemployment claim, the district court followed the instruction of *Petty I*. 538 F.3d at 448 ("We REMAND this matter to the district court with instructions to enter summary judgment in favor of Petty on the reemployment claims and to determine the resultant damages . . . ."). To the extent that Metro challenges the district court's decision to grant summary judgment on Petty's reemployment claims, *Petty I* forecloses its argument.

Accordingly, we confine Metro's arguments on appeal to a challenge of the district court's award of back pay and reinstatement, which we review for abuse of discretion. *See Fuhr v. Sch. Dist. of Hazel Park*, 364 F.3d 753, 760 (6th Cir. 2004) (reinstatement); *Madden v. Chattanooga City Wide Serv. Dep't*, 549 F.3d 666, 678 (6th Cir. 2008) (back pay). We reverse only if we find that the district court committed "a clear error of judgment, such as applying the incorrect legal standard, misapplying the correct legal standard, or relying upon clearly erroneous findings of fact." *Jones v. Ill. Cent. R.R. Co.*, 617 F.3d 843, 850 (6th Cir. 2010) (quoting *In re Ferro Corp. Derivative Litig.*, 511 F.3d 611, 623 (6th Cir. 2008)).

*Petty I* found that Metro's failure to restore Petty to his previous position pending the outcome of its second investigation constituted an ongoing violation of USERRA's reemployment provisions:

> At the point at which Petty was entitled to reemployment under §§ 4312 and 4313, Metro had no basis on which to question his qualifications. Petty had satisfied the only prerequisites to § 4313—those specified in § 4312—and Metro's attempt to impose additional prerequisites through its return-to-work process was, as we have already explained, wholly impermissible. *The process, then, including Petty's alleged "dishonesty" therein, cannot serve as a basis for delaying or otherwise limiting Petty's right to reemployment.*
>
> Furthermore, Metro cannot avoid this conclusion by arguing that its second investigation into Petty's conduct during the return-to-work process had not been completed at the time of Petty's filing of this action, and Metro therefore had not been able to determine whether Petty was qualified for reemployment in his original position with the police department. First, investigations spawned by the improper application to Petty of the return-to-work process cannot serve to delay Petty's statutory right to reemployment if the prerequisites for reemployment have been met.

*Petty I*, 538 F.3d at 443-44 (emphasis added) (citation and footnote omitted).

Pointing to another passage in *Petty I*, Metro argues that the previous panel found that Metro reemployed Petty long before Metro terminated him. *See id.* at 445 ("Petty did not request permission to engage in off-duty work . . . until approximately ten

months *after he was reemployed*." (emphasis added)).     Because USERRA's reemployment provisions do not protect a veteran after his reemployment, Metro concludes from this passage that the district court should have analyzed Petty's termination claim under the discrimination provision. *See id.* (holding that USERRA's reemployment provision "only entitles a service person to immediate reemployment and does not prevent the employer from terminating him the next day or even later the same day" (quoting *Francis*, 452 F.3d at 304)). Once a veteran is rehired, §§ 4311 and 4316 protect him from discrimination, but allow an employer to terminate a veteran so long as it can show "cause" unrelated to the veteran's military service. *See* 38 U.S.C. §§ 4311, 4316(c). If Metro truly reemployed Petty, then, USERRA would not prevent Metro from firing him if it had proper "cause" to do so.

Metro argues that Petty's dishonesty provided such cause. Metro terminated Petty at the end of its second investigation, which examined both Petty's allegedly untruthful answers to questions about his military discharge and his dishonesty during Metro's first investigation into his truthfulness. Petty's mendacity during this investigation—namely, his allegedly false statements during the OPA's investigation and during the deposition and trial in this litigation—arguably provides Metro cause to terminate Petty wholly unrelated to his military service.

But this argument misreads *Petty I*. Regardless of the court's later statement (made while discussing a separate claim) that Metro reemployed Petty, the block-quoted passage above demonstrates *Petty I*'s view that (1) Metro never fully reemployed Petty and that (2) limiting Petty's reemployment rights based on Metro's second investigation of him violated USERRA's reemployment provision. Further, other passages in *Petty I* reject the notion that Petty's alleged dishonesty during Metro's return-to-work process constituted a permissible ground for limiting Petty's reemployment rights. *See, e.g.*, 538 F.3d at 441 ("[I]t would be inconsistent with the goals of USERRA to prevent Petty from exercising his right to reemployment because he failed to provide forthrightly information that is statutorily unnecessary to his establishing the right in the first place.").

Based on the above-quoted passage, the district court concluded that *Petty I* mandated Petty's reinstatement to his former position as patrol sergeant. After trial, the court also awarded Petty back pay from his 2007 termination. In its ruling, the district court noted that the parties did not dispute that Metro never returned Petty to his former position. The court further noted that the charges underlying Petty's termination all related to his failure to provide answers to questions and documentation relating to his military service.

We find no fault with the court's conclusions. USERRA prohibits employers from placing "additional prerequisites" on returning veterans seeking to exercise their reemployment rights. *See* 38 U.S.C. § 4302. *Petty I* found that rescreening employees before reemploying them constituted such an "additional prerequisite," and concluded that Metro's additional investigation violated this prohibition. *See Petty I*, 538 F.3d at 440-41. Though USERRA may permit Metro to terminate Petty for dishonesty after reemploying him, Metro never restored Petty to his position as patrol sergeant. Accordingly, we hold that the district court properly exercised its discretion in awarding Petty back pay and reinstatement under his reemployment claim.

## C. Petty's Extra-Duty Employment Claim

Metro also challenges the district court's ruling in Petty's favor on his extra-duty-employment claim. The district court found that Metro discriminated against Petty by denying his request to work as a security guard at two Nashville restaurants, ruling that the denial violated USERRA's discrimination provision, § 4311. Petty moonlighted at the restaurant prior to his deployment, but Metro denied Petty's request to resume work at the restaurant after his return. Metro refused Petty's request because Metro had placed Petty on "administrative assignment" pending the outcome of its investigation into his alleged dishonesty during Metro's return-to-work process, and this probationary status barred Petty from engaging in extra-duty employment.

USERRA's discrimination provision prohibits an employer from denying "retention in employment" or any other "benefit of employment" based on a veteran's "membership [in uniformed service], application for membership, performance of

service, application for service, or obligation." 38 U.S.C. § 4311(a). *Petty I* described the burden-shifting framework that governs discrimination claims brought under § 4311:

> An individual bringing a § 4311 claim has the initial burden of proving a prima facie case of discrimination by showing, by a preponderance of the evidence, that his protected status was a substantial or motivating factor in the adverse employment action(s). The burden then shifts to the employer to prove the affirmative defense that the employment action(s) would have been taken in the absence of the employee's protected status.

*Petty I*, 538 F.3d at 446. Unlike a claim brought under USERRA's reemployment provisions, a claim brought under the discrimination provision requires a showing that an employer discriminated against a veteran based on a "status or activity protected by USERRA." *Id.* at 442. The operative question, then, is whether Petty's protected status served as a "motivating factor" for the denial of his request for off-duty employment.

We first grappled with this question in *Petty I*. Because Metro's investigation of Petty caused Metro to deny his request for extra-duty employment, *Petty I* considered Metro's motivations for launching the investigation. The discussion centered on whether concerns about Petty's conduct in service—or merely concerns about his honesty—spurred Metro to investigate Petty. In vacating the district court's judgment on partial findings, we concluded that if concerns about Petty's *conduct in service* motivated Metro's second investigation, "then it follows that the denial of benefits on the basis of the investigation's existence was also motivated, at least in part, by an improper purpose." *Id.* at 447.

The narrow question on remand, then, was whether concerns about Petty's military service motivated Metro's second investigation of Petty. Metro argues that the district court failed to make a finding that such an "improper purpose" motivated its investigation, and offers evidence disputing whether Petty's protected status motivated its denial of Petty's request for extra-duty employment. On appeal from a bench trial, we review the district court's factual findings for clear error and its conclusions of law de novo. *Moorer v. Baptist Mem'l Health Care Sys.*, 398 F.3d 469, 478-79 (6th Cir. 2005); *see also* Fed. R. Civ. P. 52(a)(6).

After trial on remand, the district court found that Metro's second investigation "[was] based on the improper failure to reemploy and the investigation of [Petty's] military service in violation of USERRA." The court awarded Petty $4,500 in damages for his extra-duty-work claim—the amount Petty would have received had Metro allowed him to continue working at the restaurants. Metro quotes this language and faults the district court for conflating Petty's reemployment and discrimination claims. But the quote's context reveals that the district court was making a point about the relationship between the investigation underlying Petty's reemployment claim and his discrimination claim. Elsewhere, the district court clearly makes its point regarding the improper motive behind the second investigation:

> I am finding liability on discrimination on the extra-duty work claim. The reason is that the denial of extra-duty work was based on what has now been determined to be an improper investigation in violation of USERRA by investigating Mr. Petty's military service.

A review of the record leaves us unpersuaded that the district court clearly erred in making this factual finding. Accordingly, we affirm the district court's judgment in favor of Petty on this claim.

## D. The Trial Court's Grant of Petty's Motion in Limine

Metro next challenges the district court's grant of Petty's motion in limine, which sought to exclude evidence of his alleged untruthfulness from the trial at which the district court measured the damages on his reemployment claim. Metro intended to offer this evidence in support of two affirmative defenses, unclean hands and after-acquired evidence. The court excluded the evidence for two reasons: First, the court noted that the defendant failed to cite any cases indicating that the unclean-hands or after-acquired-evidence doctrines applied to limit damages resulting from a reemployment claim under USERRA. Second, the court held that *Petty I* barred the affirmative defenses.

Metro first challenges this ruling on procedural grounds, faulting the district court for improperly ruling on its affirmative defenses through a motion in limine. The court should have required Petty to challenge these defenses through a motion to dismiss

or motion for summary judgment—so runs Metro's argument—and, because it failed to do so, the court improperly granted a motion for summary judgment "masquerading" as a motion in limine. *See, e.g.*, 75 Am. Jur. 2d Trial § 44 (2009) ("The use of motions in limine to summarily dismiss a portion of a claim has been condemned, and the trial courts are cautioned not to allow motions in limine to be used as unwritten and unnoticed motions for summary judgment or motions to dismiss.").

We reject this procedural challenge, because Metro fails to demonstrate prejudice from the purportedly improper ruling. At least one other circuit, in faulting a district court for making summary-judgment-type rulings on a motion in limine, grounded its rulings on findings that the nonmovant lacked notice and an adequate opportunity to marshal evidence. *Compare Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069-70 (3d Cir. 1990) (reversing the grant of summary judgment where nonmoving party had no notice or opportunity to present evidence), *with Howard Johnson Int'l v. Cupola Enters.*, 117 F. App'x 820, 822-23 (3d Cir. 2004) (distinguishing *Bradley* and upholding the grant of summary judgment on a motion in limine where the nonmovant had notice that the motion was dispositive). Further, a court may grant summary judgment sua sponte "so long as the losing party was on notice that she had to come forward with all of her evidence." *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 204 (6th Cir. 1998) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)); *see also* Fed. R. Civ. P. 56(e), (f). The record suggests that Metro understood that Petty's motion in limine might dispose of its affirmative defenses, and Metro fails to argue that it lacked an opportunity to present evidence in response.

In any event, we find that Metro's substantive quarrel with the district court's ruling fails under either the abuse-of-discretion standard applicable to review of a motion in limine or under the de novo standard applicable to summary-judgment rulings. *See United States v. Poulsen*, 655 F.3d 492, 508 (6th Cir. 2011) (holding that this court reviews the grant of a motion in limine for abuse of discretion). With its equitable affirmative defenses, Metro merely recasts an argument that we rejected in *Petty I*. The district court held that even if the unclean-hands or after-acquired-evidence doctrines

applied to USERRA reemployment claims, they should not apply in this case, given *Petty I*'s conclusion that Petty's alleged dishonesty "cannot serve as a basis for . . . limiting Petty's right to reemployment." Based on this holding, the district court found the doctrines inapplicable: "Given the court of appeals' rejection of [Petty]'s alleged untruthfulness as a bar to his claim for reemployment, this Court is not persuaded that such conduct should serve as a bar to *damages* on his claim for reemployment." We agree and reject Metro's challenge to the district court's grant of Petty's motion in limine.

*E. Liquidated Damages*

Finally, we address both parties' challenge to the district court's partial award of liquidated damages. Metro urges us to find that the district court abused its discretion by awarding liquidated damages on Petty's reemployment claim. Petty cross-appeals, arguing that the district court erred in awarding only *partial* damages. As with awards granted under similar statutes, we review the award of liquidated damages for a USERRA violation for an abuse of discretion. *See Thom v. Am. Standard, Inc.*, 666 F.3d 968, 973 (6th Cir. 2012) (FMLA); *Arban v. West Publ'g Corp.*, 345 F.3d 390, 408 (6th Cir. 2003) (same).

USERRA provides for liquidated damages in an amount equal to lost wages and benefits "if the court determines that the employer's failure to comply with the provisions of this chapter was willful." 38 U.S.C. § 4323(d)(1)(C). Elsewhere, this court has held that an employer's conduct was "willful" when "'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited' by the law at issue." *Koehler v. PepsiAmericas, Inc.*, 268 F. App'x 396, 403 (6th Cir. 2008) (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128 (1985)).

The district court granted liquidated damages in part, keying on the date that the Sixth Circuit decided *Petty I*. After that date—August 18, 2008—the court held that Metro "was on notice of the need to fully restore Mr. Petty to his previous position." Regardless of *Petty I*, however, Metro refused to reinstate Petty until the district court

ordered reinstatement in its February 2010 order. In ruling on its award of liquidated damages at the conclusion of the bench trial, the district court noted the clarity of the court's decision in *Petty I* and found that Metro's failure to reemploy Petty amounted to a "willful" failure to comply with USERRA.

Metro disputes the clarity of *Petty I*'s mandate. When opposing Petty's reinstatement after remand following *Petty I*, Metro claimed that a footnote in *Petty I* supported its view that it could terminate Petty before fully reemploying him if it could show "cause" unrelated to Petty's military service.[1] The court rejected Metro's argument, but conceded that the footnote was "not entirely clear." Metro seizes on this statement to argue that the district court's "admission" forecloses a liquidated-damages award.

Though Metro identifies language in *Petty I* that arguably questions whether USERRA required Petty's reemployment, other passages clearly prohibit Metro from limiting Petty's reemployment rights based on its second investigation. *See, e.g.*, *Petty I*, 538 F.3d at 433-34 ("The [return-to-work] process, then, including Petty's alleged 'dishonesty' therein, cannot serve as a basis for delaying or otherwise limiting Petty's right to reemployment."). In light of this, we uphold as within the district court's discretion its determination that Metro "was on notice of the need to fully restore Mr. Petty to his previous position" in the wake of *Petty I*. Accordingly, we reject Metro's argument.

We also reject Petty's claim to additional liquidated damages. Petty argues that the district court abused its discretion by failing to award liquidated damages for Metro's failure to restore Petty *prior* to the decision in *Petty I*. In denying liquidated damages for Metro's failure to reemploy Petty during this period, the district court found that (1) "there was a good-faith dispute [regarding] Metro's obligations under USERRA";

---

[1]The footnote reads: "At oral argument the parties indicated that Petty is no longer employed at Metro. This may limit the type of relief available to Petty on remand (e.g., placing Petty in the position of patrol sergeant may not be possible at this time); however, we leave these issues for the district court to determine." *Petty I*, 538 F.3d at 444 n.7.

and (2) reasonable questions existed about "what can be considered about dishonesty and the risk to the public of an unqualified officer" under USERRA.

We find no error in the district court's conclusion that a good-faith dispute regarding the propriety of Metro's return-to-work process existed before *Petty I.* Prior to *Petty I*, Metro interpreted USERRA's prohibition on "additional prerequisites" as meaning "additional to the *employer's* existing prerequisites"—an interpretation plausible enough to convince the district court. *See Petty I*, 538 F.3d at 442; *see also Petty v. Metro. Gov't of Nashville-Davidson*, No. 3:05-0680, 2006 WL 3333509 (M.D. Tenn. Nov. 16, 2006). The sparse case law interpreting USERRA, combined with the reasonableness of Metro's pre-*Petty I* interpretation of USERRA, both undermine the conclusion that Metro "showed reckless disregard" toward its obligations under USERRA. *See, e.g.*, *Lewis v. Rite of Passage, Inc.*, 217 F. App'x 785, 786 (10th Cir. 2007) ("Precedent interpreting and applying the USERRA is sparse." (internal quotation marks and citation omitted)).

### III.

Accordingly, we **AFFIRM** the district court's grant of summary judgment in Petty's favor, as well as its award of back pay and reinstatement; **AFFIRM** the district court's grant of Petty's motion in limine; **AFFIRM** the district court's judgment in Petty's favor on his extra-duty-employment claim; and **AFFIRM** the district court's award of partial liquidated damages.