**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **MOHAMMED JBARI**, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 16-cv-2247 (TSC) |
| **DISTRICT OF COLUMBIA**, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

Plaintiff Mohammed Jbari brings claims against the District of Columbia Metropolitan Police Department ("MPD") following his termination as a probationary police officer. Jbari used family medical leave to care for his newborn son and claims that MPD violated both the federal Family and Medical Leave Act ("FMLA") and the District of Columbia Family and Medical Leave Act ("DCFMLA"), by interfering with his leave and retaliating against him for exercising his rights to take leave. 29 U.S.C. § 2615(a); D.C. Code § 32-501 *et seq.* Around the same time that he returned from family leave, Jbari went on military leave to serve in the United States Army Reserve and he alleges that MPD discriminated against him for taking leave, failed to reemploy him upon his return, and terminated him in violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4311; 38 U.S.C. § 4312. Jbari—who is a Moroccan of Arab descent and a Muslim—also brings discrimination claims pursuant to Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C 2000e *et seq.* and the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1402.01 *et seq.*

Pursuant to Federal Rule of Civil Procedure 12(b)(6), MPD seeks dismissal of the following claims:

1) Failure to reemploy under USERRA (Count VI);[1]

2) Title VII discrimination (Count VII); and

3) DCHRA discrimination (Count VII).[2]

*See* ECF No. No. 17; *see* ECF No. 12, Amend. Compl. In addition to opposing MPD's motion, Jbari also moved for leave to file a Second Amended Complaint. ECF Nos. 20, 21. For the reasons set forth below, the court will GRANT both motions in part, and DENY them in part.

## I. BACKGROUND

Jbari became an employee of MPD on August 25, 2014 and graduated from the police academy in April of the following year. Am. Compl. ¶¶ 32-33. Several months later, he requested family medical leave to care for his newborn child from September 18 through November 14, 2015. *Id.* ¶ 35. A family and medical leave coordinator emailed Jbari an approved leave request for three hundred and twenty hours of paid leave. *Id.* ¶ 39. Two days before his family medical leave expired, MPD Captain Mongal "inappropriately instructed" Jbari to report to work immediately. *Id.* ¶ 41. Jbari responded by resubmitting his leave request to his

---

[1] Jbari's Complaint lists Count VI twice: the first Count VI relates to Jbari's USERRA failure to reemploy claim. *See* Amend. Compl. ¶¶ 168-176. The second Count VI involves USERRA individual liability claims, *see id*. ¶¶ 177- 204, but Jbari failed to name any individual defendants in the caption of the Complaint. To remedy this deficiency, he seeks to add the individual defendants in his proposed Second Amended Complaint.

[2] Jbari's Complaint also contains Count VII twice: both counts reference Title VI in the heading. *See* Amend. Compl. ¶¶ 205-222. However, the factual allegations in the second Count VII actually relate to his DCHRA claim against MPD. *Id*. ¶¶ 223-241.

supervisor, Sergeant Hrebenak.[3]  *Id.* ¶ 42.  Jbari also provided Hrebenak with military orders requiring Jbari to report for duty from November 16 (two days after his family leave was set to expire) through December 18.  *Id.* ¶¶ 42-43.  Shortly thereafter, Hrebenak emailed Jbari, confirming that his family medical leave had previously been approved for 320 hours and indicating that he was now approved for the military leave.  *Id.*

Jbari's military leave ended on December 18, 2015, and he returned to MPD the following day.  *Id.* ¶ 44.  However, at some point prior to his return, he received orders for a second tour of duty scheduled from December 27 through December 31, as well as a third tour scheduled for January 1 through January 17.  *Id.* ¶¶ 45-46.  It is not clear how many days, if any, he worked between his return from the first military leave and his subsequent military leaves, but Jbari contends each leave was "approved through the proper channels."  *Id.* ¶ 50.  Despite informing three supervisors about his orders, a few days into his third leave, on January 8, Jbari received a call from MPD Commander Groomes who allegedly said "Do you want to stay with the MPD?  If you do, you have to come back to work, and you've been AWOL for two (2) months."  *Id.* ¶¶ 47-49.  At that juncture, Jbari was not scheduled to return from military leave for approximately nine days.  On the same day that Groomes called, an MPD assistant[4] emailed Jbari requesting that he meet with Groomes a few days after he was scheduled to return from leave on January 20.  *Id.* ¶ 51.  Jbari responded that his current military leave had been extended through January 24 but, after conferring with his military supervisors, he agreed to attend the

---

[3] It is unclear who directly supervised Jbari and why his communications about his various leave requests involved numerous supervisors.

[4] The Complaint refers to her as "an Assistant" and does not elaborate.

meeting. *Id.* ¶¶ 52-53. Groomes later cancelled the meeting and Jbari returned to MPD as scheduled on January 25. *Id.* ¶¶ 54-55.

The following day, January 26, Jbari met with MPD Commander Parker about the allegations that he had been "AWOL" and provided documentation that proved he had "followed protocol" and obtained approval for each leave. *Id.* ¶ 56. Notwithstanding the documentation, Parker suspended Jbari for two days. *Id.* ¶ 57. It is unclear if, or when, the suspension actually occurred because the next day Jbari went on a certification ride.[5] *Id.* ¶ 58. One day later, Jbari received orders for a fourth military tour of duty, but there is no indication that he informed MPD of this information before MPD terminated him several days later on January 30, 2016. *Id.* ¶¶ 58-60. MPD claims it terminated Jbari for alleged performance deficiencies during his four certification rides. *Id.* ¶¶ 58, 60-61.

## II. LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim tests the legal sufficiency of a complaint. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). A claim is plausible when the factual content allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In employment discrimination cases, although plaintiffs

---

[5] According to MPD, a "certification ride is a field test where a sergeant assess a probationary officer's abilities and knowledge while out on patrol, armed and wielding full police power. Probationary officers are 'uncertified' until they pass this field test. Once certified, they are allowed to go on patrol alone." Defs. Mot. to Dismiss Br. p. 4.

must establish a plausible claim for relief, they do not need to "plead every fact necessary to establish a prima facie case to survive a motion to dismiss." *Jones v. Air Line Pilots Ass'n, Int'l*, 642 F.3d 1100, 1104 (D.C. Cir. 2011) (citation omitted).

## III. ANALYSIS

**A.      USERRA Failure to Reemploy Claim (First Count VI)**

MPD argues that this court should dismiss Jbari's USERRA reemployment claim because he admits that he "resumed his position at MPD" on January 25, the day after his third military leave ended.  *See* Am. Compl. ¶ 55.

> Congress enacted USERRA with three goals in mind:
>
> (1) to encourage noncareer service in the uniformed services by reducing employment disadvantages; (2) to minimize the disruption to the lives of persons performing military service, their employers and others by providing for the prompt reemployment of such persons upon their completion of such service; and (3) to prohibit discrimination against persons because of their service in the uniformed services.

*Bradberry v. Jefferson Cty., Tex.*, 732 F.3d 540, 544–45 (5th Cir. 2013) (citing 38 U.S.C. § 4301(a) (internal quotations omitted).  Service members may bring two types of USERRA actions: (1) claims for failure to reemploy under 38 U.S.C. § 4312 (which does not require proof of intent); and (2) claims for intentional discrimination/retaliation under 38 U.S.C. § 4311 ("An employer may not discriminate in employment against or take any adverse employment action against any person because" of military service); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 303 (4th Cir. 2006) (noting that intent is not an element of a reemployment claim) (citing 20 C.F.R. § 1002.33).  Jbari alleges both types of claims, but MPD moves to dismiss only the reemployment claim.

USERRA Section 4312(a) guarantees reemployment upon return from leave to "any person whose absence from a position of employment is necessitated by reason of service in the uniformed services." 38 U.S.C. § 4312(a). A service member must show "proper notice to his employer in advance of his departure, a service period of less than five years, a timely request for reemployment accompanied by proper documentation, and a separation from military service under 'honorable conditions.'" *See Petty v. Metro. Gov't of Nashville & Davidson Cty.*, 687 F.3d 710, 716–17 (6th Cir. 2012) (citing 38 U.S.C. § 4312); 38 U.S.C. § 4304. An employer may escape liability if it can show that reemployment would impose an undue hardship; "the employer's circumstances have so changed as to make such reemployment impossible or unreasonable"; or the service member's position was "for a brief, nonrecurrent period and there [wa]s no reasonable expectation that such employment w[ould] continue indefinitely or for a significant period." 38 U.S.C. § 4312(d)(1).

The majority of courts have held that the Section 4312 reemployment provision entitles a service member to return to work, but provides no protection thereafter. *See, e.g.*, *Hart v. Family Dental Grp., PC*, 645 F.3d 561, 563 (2d Cir. 2011) (affirming judgment as a matter of law for the employer where plaintiff returned to work on January 17 and was notified on January 20 that he would be terminated in sixty days); *Coyaso v. Bradley Pac. Aviation, Inc.*, No. 11–00267 JMS/RLP, 2012 WL 1580470, at *13 (D. Haw. May 3, 2012) (granting summary judgment for the employer where plaintiff was placed on leave the same day he returned to work, and was later terminated without ever resuming his job duties).

In *Francis v. Booz, Allen & Hamilton, Incorporated.* 452 F.3d 299, 303-4 (4th Cir. 2006), one of the cases upon which MPD relies, the Fourth Circuit examined USERRA's statutory

structure in concluding that the reemployment provision only protects a service member up to the time she returns to work. The Court noted that Section 4312 provides that a service member "shall" be reemployed upon return from service, and explained that Section 4312 serves only to guarantee reemployment regardless of the employer's intent. *Id*. at 303; *see* 38 U.S.C. § 4312(a). Section 4311 on the other hand, "prohibits discrimination with respect to any benefit of employment against persons who serve in the armed services after they return from a deployment and are reemployed." *Francis*, 452 F.3d at 304 (citing *Warren v. IBM,* 358 F. Supp. 2d 301, 310 (S.D.N.Y. 2005)); *see* 38 U.S.C. § 4311. Another provision, Section 4316 "converts the otherwise at-will employment status of covered individuals to one in which they are protected from dismissal except for cause for a period of time" after reemployment. *Francis*, 452 F.3d at 304 (citing *Warren*, 358 F. Supp. 2d at 310).

Viewing these provisions together, the Court in *Francis* held that "§ 4312 only entitles a service person to immediate reemployment and does not prevent the employer from terminating him the next day or even later the same day." *Francis*, 452 F.3d at 304 (citing *Jordan v. Air Prods. & Chems., Inc.*, 225 F. Supp. 2d 1206, 1208 (C.D. Cal. 2002)) (internal quotations omitted). The court reasoned:

> If § 4312 provided ongoing protection after reemployment, it would subsume the specific guarantees of §§ 4311 and 4316. "We are 'loath' to read one statutory provision so as to render another provision of the same statute superfluous." *Gonzales,* 419 F.3d at 283 (quoting *Cooper Indus. v. Aviall Servs., Inc.,* 543 U.S. 157, 125 S. Ct. 577, 160 L.Ed. 2d 548 (2004)). Congress carefully constructed USERRA to provide comprehensive protection to returning veterans, while balancing the legitimate concerns of employers. We will not upset that balance and render USERRA sections meaningless by adopting [an] overly broad interpretation of § 4312 . . . .

452 F.3d at 304-5 (internal alterations omitted). Finally, the Court noted that "[t]he apparent harshness of this result is addressed by the fact that §§ 4311 and 4316 operate to protect the

employee as soon as she is reemployed." *Id.* at 304; *see also*, *Hernandez v. Results Staffing, Inc.*, 677 F. App'x 902, 908 n.5 (5th Cir. 2017) (explaining that once the service member is reemployed, "§§ 4311 and 4316 protect him from discrimination, but allow an employer to terminate him so long as the employer can show 'cause' unrelated to the veteran's military service.") (citing 38 U.S.C. §§ 4311, 4316(c)).

USERRA does not define the term "reemployment," which is at the heart of the parties' dispute. MPD moves to dismiss Jbari's reemployment claim because Jbari concedes that he returned to work at the conclusion of his military leave, and he therefore was reemployed. Jbari counters that MPD did not reemploy him in "good faith" but instead suspended him immediately upon his return from military leave and terminated him several days later, after he received (but had not yet disclosed) military orders for another leave.

This "good faith" requirement was first articulated in *Vahey v. General. Motors Corporation*, 985 F. Supp. 2d 51 (D.D.C. 2013). In *Vahey*, plaintiff was a GM North America employee, meaning he was not "assigned to the headcount of any particular GM facility," although he was physically assigned to various facilities for temporary periods. 985 F. Supp. 2d at 54. At the time he went on military leave, Vahey was assigned to a Delaware facility and, as the end of his leave approached, he was informed by GM Human Resources that the Delaware facility was scheduled for closure. *Id.* at 55. Human Resources "said something about a separation package," and suggested Vahey "would be getting severed." *Id.*

After his military discharge, Vahey returned to the Delaware facility, and was told he would be added to the employment rolls effective his last day of military service, and then would be terminated in approximately two weeks, at which time he would receive severance pay. *Id.*

The record did not indicate that Vahey actually performed any job duties during his two weeks on the payroll. *Id*. GM moved for summary judgment, arguing that Vahey's claim failed because the company reemployed him to his same position and seniority date. *Id.* at 59.

Rejecting this argument, the court noted that "USERRA 'must be broadly construed in favor of its military beneficiaries,'" *id*. at 59 (citing *Francis,* 452 F.3d at 303), and that Congress had authorized district courts to use their "full equity" powers to vindicate veterans' USERRA rights. *Vahey,* 985 F. Supp. 2d at 60 (some citations omitted) (citing *Serricchio v. Wachovia Secs. LLC*, 658 F.3d 169, 174 (2d Cir. 2011)). The court therefore refused to "allow form to prevail over substance" and instead looked behind the actual job description in assessing GM's claim that it had reemployed Vahey to the same position. 985 F. Supp. 2d at 60 (citing *Bride v. Baker,* 37 App. D.C. 231, 236 (D.C. Cir. 1911) ("Equity looks to substance, and not to form, and will not lend its aid to one whose sole ground for seeking such aid is based upon a technicality."); *EEOC v. Sears, Roebuck & Co.,* 839 F.2d 302, 346 (7th Cir. 1988) ("[C]ourts have invariably gone beyond job descriptions to analyze, often in-depth, actual job duties and job performance.")). The court held that a reasonable fact finder could determine that GM did not reemploy Vahey to the same position he previously held, but instead "'reemployed' him into layoff status." 985 F. Supp. 2d at 60.

The court in *Vahey* acknowledged the existence of contrary authority such as *Francis*, but explained that those cases

> anticipated a situation where the veteran was <u>actually reemployed</u> in good faith, with at least the <u>possibility</u> of continued employment of indefinite length—not the pro forma, nominal reinstatement that took place here, in which all parties were aware that Vahey did not even need to show up to work, and that he would surely be officially terminated just two weeks later.

985 F. Supp. 2d at 60 (citing *Petty,* 687 F.3d at 718 (asking whether the defendant "truly reemployed" the plaintiff)) (emphasis in original).

Relying on *Vahey*, Jbari argues that this court should not allow form to prevail over substance, but instead recognize that MPD failed to reemploy him in "good faith." Jbari also points out that *Vahey* was decided at the summary judgment stage, rather than on a motion to dismiss, and that this court need not consider at this juncture whether the certification ride was evidence of good faith or whether MPD decided to terminate him before he returned. Instead, he argues, the pertinent issue is whether he pleads sufficient facts to support a reemployment claim.

The court finds that Jbari has not pleaded sufficient facts to support his USERRA reemployment claim, and his reliance on *Vahey* is misplaced. In *Vahey*, the court was tasked with determining whether GM reemployed Vahey in the same position he would have held, absent taking leave, as required by Section 4313,[6] not Section 4312, which simply requires "reemployment" so long as the service member satisfies certain preconditions. *See Vahey*, 985 F. Supp. 2d at 58-60. In order to do so, the court looked beyond the job description to determine whether Vahey returned to work performing similar duties, or any duties at all. *See id.* at 59-60. In doing so, the court necessarily applied a "good faith" standard to interpret the statute in a manner consistent with its Congressional intent.

In contrast, the circumstances here do not require such an inquiry. Jbari does not contend that he returned to work in a position other than the one he held when he departed for leave, and

---

[6] Section 4313 requires an employer to "promptly" reemploy the service member to "the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by such service . . . ." 38 U.S.C. § 4313(a)(1)(A).

he does not assert a claim under Section 4313. Instead, he alleges that he returned to work on January 25, met with his supervisor on January 26 and was informed he was to be suspended for two days, but the following day he performed his job duties by going on a certification ride, and was terminated three days later—five days after he returned to work. Amend. Compl. ¶¶ 55-56, 58, 60. In *Vahey*, however, the plaintiff did not return to his job duties, and "all parties were aware that Vahey did not even need to show up to work, and that he would surely be officially terminated just two weeks later." 985 F. Supp. 2d at 60.

Finally, Jbari's argument that his reemployment claim should proceed because a motion to dismiss—as opposed to a motion for summary judgment—tests only the sufficiency of the pleadings, is unavailing. Jabari himself pleads facts in his Complaint which defeat a reemployment claim. Further pleading or discovery will not alter Jbari's concession that he was reemployed before he was terminated, and therefore the court will grant Defendant's motion to dismiss Jbari's Section 4312 USERRA reemployment claim with prejudice. To the extent Jbari uncovers evidence that MPD planned to terminate him after his return, his Section 4311 claim for discrimination and retaliation provides the basis for relief.

**B.      Title VII and DCHRA Claims against MPD (Both Counts VII)**

Jbari is of Moroccan descent, has a brown complexion, is the father of a newborn[7] and is a Muslim. Am. Compl. ¶¶ 21-25. He claims that MPD discriminated against him in violation of

---

[7] In addition to the same protections afforded under Title VII, the DCHRA also protects against discrimination based on "family responsibilities." *See McNair v. D.C.*, 213 F. Supp. 3d 81, 86 (D.D.C. 2016) (citing D.C. Code § 2-1402.11(a)(1)). MPD has not taken a position on whether the DCHRA provides protection for Jbari's status as a new father. *See* Defs. Mot. to Dismiss p. 10 n. 4.

Title VII and the DCHRA, when Captain Mongal instructed him to return to work before his family leave expired, when MPD suspended him[8] upon his return from military leave, and when MPD terminated him.  *Id.* ¶¶ 218-20, 237-239.

MPD argues that Jbari's allegations are insufficient to state a claim for relief under Title VII and the DCHRA because they are conclusory,[9] and Jbari has not alleged sufficient facts to support an inference of discrimination, such as an allegation that MPD treated similarly situated employees outside of his protected class more favorably.  Defs. Mot. to Dismiss Br. pp. 9-10. Absent such facts, MPD argues, it is unreasonable to infer that Jbari's protected status was the reason for his treatment.  *Id.*

Jbari argues that his proposed Second Amended Complaint, which alleges, based on information and belief, that he was treated differently than others outside of his protected class, but which does not identify comparators, solves any Title VII and DCHRA pleading deficiencies.  He relies on *McNair v. District of Columbia.,* 213 F. Supp. 3d 81, 86–87 (D.D.C. 2016), in which the plaintiff alleged discrimination in not being allowed to work from home, claiming that unnamed persons of a different race were permitted to do so.  In denying defendant's motion to dismiss, the court found that plaintiff's claims, although "lack[ing] specifics," were actionable because she alleged the employer took an adverse employment action against her, but did not do so with respect to similarly situated employees of a different race.  *Id.*

---

[8]  Jbari does not allege that he was actually suspended, but that Parker "decided" to suspend him for two days.  *See* Amend. Compl. ¶ 57.

[9]  Title VII and DCHRA claims are analyzed under the same legal standard.  *Slate v. Public Defender Service for D.C.,* 31 F. Supp. 3d 277, 290 n.3 (D.D.C. 2014); *Carpenter v. Fed. Nat'l Mortg. Ass'n,* 165 F.3d 69, 72 (D.C. Cir. 1999).

at 87. The court reasoned that this was sufficient to put the employer "on basic notice of her claim against it." *Id.*; *see also* Fed. R. Civ. P. 8(a). Other courts have also allowed plaintiffs to proceed at the motion to dismiss stage without naming comparators. *See, e.g., Boykin v. KeyCorp,* 521 F.3d 202, 215 (2d Cir. 2008) (reversing district court's dismissal of complaint where plaintiff alleged a bank discriminated against her by denying her a loan while treating white customers more favorably, but did not identify comparators). Courts have also permitted claims for disparate treatment based upon information and belief. *See, e.g., Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119–20 (2d Cir. 2010) (J. Sotomayor) ("The *Twombly* plausibility standard, which applies to all civil actions, . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant.") (citations omitted).

The court finds that Jbari's allegations—based on information and belief—that MPD treated persons outside of his protected class more favorably, coupled with his allegations regarding MPD's responses to his approved leaves, are sufficient to support his Title VII and DCHRA claims. Jbari alleges that he obtained prior approval for all leaves, but that MPD: (1) ordered him to return from both family leave and military leave early; (2) threatened to terminate him for taking the approved leaves; (3) ignored evidence that he had obtained approval for leave and decided to suspended him because he was purportedly AWOL; and (4) terminated him shortly after he returned from leave. He further alleges in his proposed Second Amended Complaint that he was treated less favorably than others outside of his protected class. *See e.g.,* Prop. Second Am. Compl. ¶¶ 233-36, 256-260. These factual allegations, taken together, are enough to create an inference that MPD acted with discriminatory intent.

**C.      Motion for Leave to File Second Amended Complaint**

Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires." *See Firestone v. Firestone,* 76 F.3d 1205, 1208 (D.C. Cir. 1996). As the Supreme Court has explained:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis,* 371 U.S. 178, 182 (1962).

In his proposed Second Amended Complaint, Jbari seeks to add the allegations discussed above related to his Title VII and DCHRA claims, and to:

1)  correct the current numbering errors;

2)  add six individual defendants against whom he asserts individual liability claims pursuant to USERRA; and [10]

3)  add DCHRA individual liability claims.

ECF No. 20, Mot. to Amend. p. 1; *see* ECF No. 22, Prop. Second Am. Compl. p. 2 n.1.

1.  DCHRA Individual Liability Claims

Jbari explains in his motion for leave to amend, and in a footnote in the proposed Second Amended Complaint, that he seeks to "assert one new count of discrimination under the DCHRA against" the individual Defendants. Mot. to Amend. p. 4; Prop. Second Am. Compl. p. 2 n.1. However, Jbari did not include a count asserting DCHRA individual liability in the proposed

---

[10]   As discussed above, Jbari included a count for individual liability under USERRA in his current Complaint, but failed to list any individual Defendants in the case caption.

Second Amended Complaint. Therefore, he has not sufficiently pleaded the claim and the court will deny—without prejudice—Jbari's motion to add this count.

MPD objects to the DCHRA individual liability claims because it contends that Jbari failed to assert sufficient facts to establish that any of the individual defendants are subject to liability. Although Jbari alleges, in the paragraphs identifying the parties, that each of the defendants "had decision making authority to control the terms and conditions of Jbari's employment," *see* Prop. Second Am. Compl. ¶¶ 3-8, MPD argues these allegations do not pass muster and urges the court to deny Jbari's motion to amend as it relates to these claims.

Jbari did not file a reply in support of his motion on this issue and therefore the court will treat the issue as conceded. *See Amiri v. Gelman Mgmt. Co.,* 734 F. Supp. 2d 1, 4 (D.D.C. 2010), *aff'd*, 427 F. App'x 17 (D.C. Cir. 2011) ("Plaintiff's opposition fails to address this argument, and the Court treats the matter as conceded.") (citing LCvR 7(b)). Should Jbari seek leave to re-plead these claims, he must either include additional factual allegations or address why his alleged facts suffice to support DCHRA claims for individual liability.

2. USERRA Individual Liability Claims

MPD argues that Jbari's motion to amend his USERRA individual liability claims should be denied because the claims are not actionable. MPD relies primarily on two Ninth Circuit cases: *Townsend v. University of Alaska*, 543 F.3d 478, 486–87 (9th Cir. 2008) and *Rimando v. Alum Rock Union Elementary School District*, 356 Fed. Appx. 989, 991 (9th Cir. 2009). In *Townsend,* the Court rejected individual liability claims under USERRA Section 4323:[11]

---

[11] Section 4323, "Enforcement of rights with respect to a State or private employer" provides in relevant part:

USERRA expressly creates only two private causes of action: (1) an action brought by an individual against a State (as an employer). . . ; and (2) an action brought against a private employer. . . *See* 38 U.S.C. § 4323(a)(2).  Despite the plain text of the statute, Townsend argues that USERRA also creates a cause of action against the supervisors, because the Act defines "employer" to include "<u>a person</u>, institution, organization, or other entity to whom the employer has delegated the performance of employment-related responsibilities," 38 U.S.C. § 4303(4)(A)(i) (emphasis added), and the supervisors are persons.  The USERRA cause of action, however, arises against "a State (as an employer)." *See id.* § 4323(a)(2).  Individual supervisors are not included in the definition of "State." *See id.* § 4303(14) (defining "State").  Although the cause of action can be brought against a "State (as an employer)," "as an employer" describes the capacity in which the State can be sued; it does not create a cause of action against individual state employees even if they exercise supervisory responsibility.  Thus, an action under USERRA is available only against the State "as an employer," and not in some other capacity. . . . . Thus, Townsend's attempt to sue individual supervisors under the cause of action which the Act provides against a "State (as an employer)" fails. Nor are the individual state supervisors "private employers." While the supervisors may fit under the definition of "employer," we agree with the district court that it would do violence to the language of the statute to consider a state employee-supervisor a "private employer."

543 F.3d 478, 486 (9th Cir. 2008) (emphasis in original); *see also Rimando*, 356 Fed. Appx. at

991 (affirming dismissal of plaintiff's induvial liability claim against supervisor because it was

"foreclosed by [the court's] holding in *Townsend*").

---

(1) A person <u>may commence an action for relief with respect to a complaint against a State</u> (as an employer) or a private employer if the person—

   (A) has chosen not to apply to the Secretary for assistance under section 4322(a) of this title;

   (B) has chosen not to request that the Secretary refer the complaint to the Attorney General under paragraph (1); or

   (C) has been refused representation by the Attorney General with respect to the complaint under such paragraph.

38 U.S.C. § 4323 (emphasis added).

Jbari argued in his motion to amend that the USERRA individual liability claims are viable because they were "properly raised" in the operative complaint and MPD was already aware of the facts underlying the claim. Pls. Mot. to Amen. pp. 5-6. However, Jbari did not file a reply addressing MPD's argument that the claims are not cognizable. Therefore, the court will also treat this argument as conceded and deny Jbari's motion to amend to add USERRA individual liability claims. If Jbari seeks to re-plead the claims, he shall explain in detail why the court should decline to follow the Ninth Circuit's reasoning in *Townsend* and *Rimando*.

## IV. CONCLUSION

For the reasons set forth above, the court will GRANT MPD's motion to dismiss in part, and DENY the motion in part. The court will dismiss Plaintiff's USERRA reemployment claim with prejudice. In all other respects, MPD's motion will be denied.

The court will also GRANT Jbari's motion for leave to file a Second Amended Complaint in part, and DENY the motion in part. The court will grant the motion with respect to Jbari's additional Title VII and DCHRA factual allegations. The court will deny the motion in all other respects, including addition of the individual defendants. [12]

Date: March 31, 2018

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

---

[12] The court interprets Jbari's use of the plural form in the Title VII count of the proposed Second Amended Complaint, Prop. Second Am. Compl. ¶¶ 217-232, as a clerical error, because there is no individual liability under this statute. *Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir. 1995).